Case 30—PETITION EQUITY—December 7.

# Payne, &c., v. Johnson's Ex'ors.

95  175
s102 156

APPEAL FROM FAYETTE CIRCUIT COURT.

1. To AUTHORIZE A DEED TO BE TREATED AS THE EXECUTION OF A POWER OF APPOINTMENT by the grantor, the intention to execute the power must be clear, so that the transaction shall not be fairly susceptible of any other interpretation. Therefore, where a devisee under a will took one-half his share in fee and the other half for life, and after his death "to such uses as he may declare, limit or appoint by deed or will," a deed executed by him conveying "all his right, title, interest and claim" in and to the property devised, can not be regarded as an execution of the power of appointment, and therefore passed the absolute estate in one-half the property described and only the grantor's life estate in the other half.

2. EXECUTION OF POWER OF APPOINTMENT BY WILL.—While such is the general rule as to the execution of powers of appointment and is

still the rule in this State as to the execution of such powers by deed, the rule as to the execution of such powers by will has been changed by our statute, under which a general devise of what the testator owns must be regarded as the execution of a discretionary power of appointment unless a different intention appears by the will. (Gen. Stats., chap. 113, sec. 22.) Therefore a devise by a testator of " what little property I have after the payment of my debts" passes property which had been devised to him for life and after his death to such uses as he might appoint by will.

3. DEVISE CHARGING PROPERTY WITH PAYMENT OF DEBTS.—The testator by such a devise charged with the payment of his debts the property held by him for life with power of appointment, as he had a right to do.

4. LIFE ESTATE WITH POWER OF DISPOSITION.—While a devise of an estate generally or indefinitely, with the power of disposition, passes the fee, yet where the first taker is given an estate for life only, that express limitation will control the operation of the power and prevent it from enlarging the estate into a fee.

5. SUBSTITUTION.—Where money borrowed by a devisee was applied to the extinguishment of liens on the land devised which had been created by the testator, that fact did not entitle the creditor to be substituted to the rights of the lienholder. Having taken indemnity from the devisee by way of mortgage he obtained in that way all he bargained for.

6. PARTIES TO ACTION—JUDICIAL SALES—REVERSAL OF JUDGMENT.— While all creditors are not necessary parties to an action by an administrator for the settlement of his intestate's estate, still they are entitled to be heard. And in a case like this, where creditors of a testator are claiming contract liens upon property which the testator has by his will charged with the payment of debts generally, the general creditors, or some of them, are necessary parties to the action. And the court in this case having improperly adjudged the existence of a lien, the general creditors not being parties to the action and having no one to represent them, the general rule that the reversal of a judgment does affect the title of the purchaser at a sale made under the judgment, does not apply, and the sale as well as the judgment should be set aside.

DAVID W. FAIRLEIGH FOR APPELLANT.

1. The complex conveyances creating the liens to secure the payment of the notes sued on are to be regarded as mere mortgages.

2. An instrument will not be treated as the execution of a power unless the intention to execute is apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. (Blagge v. Miles, 1 Story, 426.)

Payne, &c., v. Johnson's Ex'ors.

3. A power is not an estate and has none of the elements of an estate. (18 Am. and Eng. Ency. of Law, 881; Jones v. Clifton, 101 U. S., 225.)

4. The power was not executed or intended to be executed by Aaron K. Woolley by any instrument made by him anterior to his will. But even if there was an attempt or intention to execute the power, the attempt was abortive, because the power could not be executed by mortgage.

The doctrine that the power of sale includes the power to mortgage, which was never the law of Kentucky, has no application to the question in hand. Here Aaron K. Woolley had only a bare authority to nominate a person, in a named event, to take the remainder in fee, and the person so nominated would not take as his grantee, nor under his instrument of appointment, but under the instrument creating the power, viz.: the will of Mrs. Woolley. The appointee would take the remainder in fee as *devisee* under Mrs. Woolley's will. (Cruise's Digest, 219; 4 Kent's Comm., 327, 337; 2 Washb. on Real Prop., 320; Legget v. Doremus, 25 N. J. Eq., 122; Albert v. Albert, 68 Md., 352; 18 Am. and Eng. Ency. of Law, 925.)

The mortgagee has no title or estate in the land, but only a lien for the security of the debt. (Woolley v. Holt, 14 Bush, 788.)

5. The power was not executed by the paper probated as the will of Aaron K. Woolley.

6. The court should reverse the order confirming the sale as well as the judgment under which the sale was made. The doctrine of the security of purchasers at judicial sales does not apply where there is an appropriation of one person's property to pay the debts of another. (Miller v. Hall and Wife, 1 Bush, 229.)

R. W. WOOLLEY and FAIRLEIGH & STRAUS of counsel on same side.

J. D. HUNT for johnson's executors.

1. The mortgages to Zerilda Hearn and M. C. Johnson were operative not only as a mortgage of Aaron K. Woolley's fee-simple moiety, but also as an appointment by deed of the moiety of which he had only a life estate, with the power of appointment, and on Aaron K. Woolley's death without issue became effectual as a valid mortgage of the entire estate. But if for any reason that contention be not well founded, then the absolute deed of Aaron K. Woolley to John B. Payne and the deed of trust from John B. Payne to R. W. and F. W. Woolley, trustees (in the execution of which Aaron K. Woolley also united), by which the plaintiff's debts were expressly secured, constituted another full and valid appointment within the powers conferred by Mrs. S. H. Woolley's will.

2. An error in the judgment directing the sale furnishes no ground for setting aside the sale. (Hayes v. Griffith, 85 Ky., 377; Yocum v. Foreman, 14 Bush, 494.)

GEO. S. SHANKLIN FOR APPELLEE JOHN T. HUGHES.

Where the court has jurisdiction of the subject matter and of the parties, and there is no unfairness in the transaction, the title acquired by a purchaser at judicial sale will never, upon a reversal of the judgment or decree, be disturbed. (Parker's Heirs v. Anderson's Heirs, 5 Mon., 445; Amos v. Stockton, 5 J. J. Mar., 638; Clark v. Farrow, 10 B. M. 446; Benningfield v. Reed, 8 B. M., 102; Gosson v. Donaldson, 18 B. M., 230; Yocum v. Foreman, 14 Bush, 694; South Fork Canal Co. v. Gordon, 2 Abbott, 485.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Mrs. Sally Howard Woolley died in the county of Fayette, leaving a large real and personal estate which she devised to her children. The present litigation originated from the sixth clause of her will, which reads as follows:

"Sixth. It is my will that my executors and trustees, after the payment of my debts and settlement of my estate, divide or cause to be divided all the rest and residue of my estate, real, personal or mixed, into equal portions, for the purpose of making just and equal partition among my children, and their descendants; and after such division shall have been made, I direct my executors and trustees to convey to each one of my children, or their descendants entitled thereto, one-half of such share or purpart, absolutely and in fee-simple, and the other half of such share shall be held or invested in good real estate in the discretion of my trustees and executors for the use and benefit of my said child for the term of his natural life, and after his death to the use and for the benefit of his children, or in default of children living at the time of his death, to such uses as such child may declare, limit, or appoint by deed or will; and in default of such appointment, then such moiety of such share shall pass to and vest in the heirs of such child absolutely and in fee-simple. . . . It is my will that this provision shall only apply to the shares of my

sons, and not to the shares of my daughters, which are hereinafter specially provided for by me."

Under this clause of the will each son had an interest in fee-simple in one-half of the share allotted him, and a life estate in the other half, with remainder to his children, and in default of children living at the son's death, the latter (the son) is given the power of appointment by deed or will to such uses as he may see proper; and in default of such appointment then the moiety devised to the son for life shall pass to his heirs in fee-simple.

The testatrix was the owner at her death of a large and valuable tract of land near Lexington, called "Howard's Grove." The executors of the will had the real estate partitioned between the devisees, and Aaron K. Woolley, one of her sons, obtained as his share in the Howard's Grove tract one hundred and sixty-six acres, that was conveyed to him by the executors as directed by the will, one-half in fee-simple and one moiety for life, with remainder over with the power of appointment, etc. Before any partition of this land was made, Aaron K. Woolley (the son) made an absolute conveyance to John B. Payne of " *all·his right, title, interest and claim*" in and to this Howard's Grove tract of land, and also his interest in other realty located in and out of the State. While this conveyance to John B. Payne is absolute on its face, it is apparent that it was not a sale, but executed to Payne to enable the grantor to raise money to pay off his indebtedness, and by a writing, executed by John B. Payne at the date of the deed, made to him by Woolley, Payne obligated himself, after he was repaid any moneys he might advance for Woolley, to convey this land in trust to Robert and Frank Woolley, to hold for the benefit of the

original grantor, in the same manner as provided by the will of his mother, reserving to the grantor (Aaron K. Woolley) the power of appointment by deed or will. It does not appear that Payne paid any money for Woolley, and the former after this, by a conveyance of record, substituted R. W. Woolley and Frank Woolley as trustees for Aaron K., as provided by the terms of the obligation executed by Payne to Aaron K. Woolley at the time Woolley executed the conveyance to Payne.

Prior to the conveyance by Payne to these trustees, Payne and A. K. Woolley executed a mortgage to Zerilda R. Hearn on sixty-six acres of this share of the Howard's Grove tract allotted to A. K. Woolley in the partition, to secure the payment of three thousand dollars, and in the year 1876 the trustees, R. W. Woolley and Frank Woolley, in conjunction with Aaron K., placed another mortgage on the latter's share, one hundred and sixty-six acres, to secure a debt to Madison C. Johnson of one thousand seven hundred dollars, the mortgage purporting to convey all of the first parties' " *right, title and interest of any kind in the above described property.*"

The conveyance from A. K. Woolley to Payne was executed to the latter on the 2d of September, 1873, and reconveyed to R. W. Woolley and Frank Woolley, as trustees of A. K. Woolley, on the 23d of March, 1874, and in each conveyance the limitations and conditions placed upon the share devised to A. K. Woolley are reserved to the devisee, and particularly by the writing executed by John B. Payne to A. K. Woolley at the date of the conveyance by Woolley to Payne. That writing, of the same date of the deed, authorizes Payne to reconvey to Robert W. Woolley and to Frank Woolley this land

in trust, which was done by the deed of March 23, 1874. The writing further provides that these trustees shall convey the property in such manner as he may by will direct, showing a reservation on the part of A. K. Woolley of the right to exercise this power given him by the will of his mother.

After the execution of these several conveyances, including the mortgages to Mrs. Hearn and to M. C. Johnson, A. K. Woolley died, leaving a last will, by which he devised his estate to his sister, Mrs. Payne, Frank Woolley and Vertner Woolley. The will was admitted to probate in the Fayette County Court, its contents being embraced in a letter written to his sister, Mrs. Payne: "What little property I have, after the payment of my debts, I desire shall be equally divided between Frank, Vertner and yourself. I make no formal will, but the above is the way that I want what little remains from the wreck of my property shall go." Signed, A. K. Woolley.

Madison C. Johnson acquired by purchase, or in some other manner, the note for $3,000 given to Mrs. Hearn, and held the note executed to himself for $1,700. He having died, his executors, John Allen and Henry V. Johnson, instituted this action to enforce the mortgage liens for the two debts, and the chancellor directed the sale of the entire one hundred and sixty-six acres, upon the ground that the power of appointment had been exercised by the original conveyance of the land from A. K. Woolley to Payne, and the principal question in this case is, was the moiety in which A. K. Woolley had only a life estate subject to the payment of the notes sued on by reason of the mortgages executed to secure them?

It is plain that all the instruments of writing by which

liens were created on this entire share allotted to A. K.
Woolley were in the nature of mortgages, and no attempt
was at any time made to pass the absolute fee, but, on the
contrary, the intention to do so is negatived by the two
writings, that upon their face create only an equitable
right on the part of the two creditors by which a lien is
created to pay the grantor's debts.   This lien may be en-
forced, but only to the extent of the interest of A. K.
Woolley in the land devised to him by his mother.   This
he purported to convey, not only by the mortgages to
Johnson and Mrs. Hearn, but by the original conveyance,
to John B. Payne, passing to the latter "all his right,
title, interest and claim in and to the estate known as the
Howard's Grove estate."   What right or title did he then
have may be the proper subject of inquiry, and what title
was intended to be passed by the conveyance to John B.
Payne. The will of Mrs. Woolley had then been admitted
to probate and, under its provisions, her son, Aaron K.
Woolley, had a fee in one moiety of his share and a life
estate by express terms in the other.   The parties were
attempting to convey only what title the grantor, Aaron
K. Woolley, had, and instead of exercising the power of
appointment given him by the will, he was reserving it by
the writing executed to him by Payne at the same time this
absolute deed, intended only as a mortgage, was executed.

It may be argued that the creditor, Mrs. Hearn, had no
notice of the writing given by Payne to Woolley, showing
that the deed to Payne was only to secure him in his lia-
bility for Woolley, and seeing the deed to Payne of record
had the right to assume that it passed the absolute fee.
The right, title and interest of the grantor was intended
to be conveyed, and the creditor parting with his money

could easily have ascertained, by an examination of the will of Mrs. Woolley, the nature and extent of her son's interest. There was no attempt by any language used in the deed to Payne that would indicate the exercise of the power of appointment, or an intention to do so, but only a purpose to pass all the title the grantor had in the land, and nothing more.

The execution of the power must be in express terms, or by necessary implication, and following the well-settled rule on the subject, it can not be said that the writing or conveyance to Payne was an execution of the power.

In Funk v. Eggleston, 92 Ill., 515, it is said: " The intention to execute the power must be apparent and clear, so that the transaction shall not be fairly susceptible of any other interpretation; for if it be doubtful under all the circumstances, that doubt will prevent it from being deemed an execution of the power. But it is not necessary that the intention to execute the power should appear by express terms or recitals in the instrument. It is enough that it shall appear by words, acts or deeds demonstrating the intention." (Blagge v. Miles, 1 Story, 426.)

Recognizing this doctrine, it can not be maintained that the incumbrance placed upon the property by the donee of the power was an appointment, or intended as such. Nor was A. K. Woolley invested with a fee by reason of the general power given him to dispose of that part of the devise in which, by express terms, he held an estate for life. Chancellor Kent says that a devise of an estate generally or indefinitely, with the power of disposition, passes the fee, but this is qualified by saying, " unless the testator gives to the first taker an estate for life only and annexes to it the power of disposition. In such a case the

express limitation for life will control the operation of the power and prevent it from enlarging the estate into a fee." (Kent's Com., vol. 4, 520; McCullough's Adm'r v. Anderson, 90 Ky., 126.)

The power of disposition exists in this case because the donee of the power had only a life estate and must exercise the power of appointment, else the estate passes as directed by the will of Mrs. Woolley.

We have referred to the rule by which courts are to be governed in determining whether or not a power of appointment has been exercised, but that rule with reference to a general devise or bequest has been changed by our statute as to wills. It provides: "A devise or bequest shall extend to any real or personal estate over which the testator has the discretionary power of appointment, and to which it would apply if the estate was his own property, and shall operate as an execution of the power unless a contrary intention shall appear by the will." (General Statutes, chapter 113, section 22.) This provision is taken from the English Statute of Wills, and, as Judge Story says in a note to Blagge v. Miles, has dispensed with "the refined and subtle distinctions in relation to the execution of powers."

The will of the testator, A. K. Woolley, is set forth in the petition to subject this property, as well as the other writings referred to, and the question arises, was this will in execution of the power? It is contended it is not; because it shows upon its face that such was not the intention of the testator, for the reason he only disposes of his estate—"what *little property* I have after the payment of my debts I devise. . . . I make no formal will, but the·

above is the way I want what little remains from the wreck of my property shall go."

The right to dispose of this life estate by will so as to pass the fee is unquestioned, and if this had been the testator's own estate it would certainly pass under this provision of his will. He could dispose of it as he pleased, and was, when executing the power, passing to his devisees a perfect title. What he regarded as his estate was that, doubtless, over which he had complete control, and having mortgaged the estate in which he held the fee, knew full well there could be but little left of *his estate*. The devise, by the terms of the statute, *of what little he had*, carried with it the real estate over which he had the discretionary power of appointment, and the fact of his devising "*what little property he had*," does not negative the idea of his intention to pass by his will this life estate, and if it *had been his own property*, in the language of the statute, it would have passed by its provisions. It is said that the will confines the devise to the property of the testator. If so, then by the statute the title to this life estate passes, for if not, a general devise of what the testator owns must be held not to pass that over which he has this discretionary power of appointment. It is argued that a power of this sort is not property, and while this may be so, by this statute it passes as property from the donee of the power to his devisee under a devise of *all the testator owns*. It was not originally liable for the debts of the donee of the power, but he can make it so, and having borrowed this money for his own purposes, we can not well see why he might not have intended to charge this estate with the payment of his debts. The will being in execution of the power, it is thus evident that these appellees hold no lien

on that part of the share of Aaron K. Woolley in which he held a life estate. The testator makes it liable for the payment of his debts, and here is in fact a devise to creditors who are entitled, in so far as this record shows, to receive the proceeds of sale in proportion to their respective claims.

It is argued that some of the borrowed money was applied to the extinguishment of liens on this land created by the original testatrix, and the creditor should, therefore, be substituted to the rights of the lienholder. This can not be done. The creditor took indemnity by way of mortgage, and obtained all he bargained for in that way, and therefore has no priority over other creditors in the one-half of this land.

While all creditors are not necessary parties to an action by an administrator for the settlement of an estate, still they are entitled to be heard, and in a case like this, with no one representing them, and their debts a charge upon the realty, they, or some of them, were necessary parties to the action enforcing this lien. A judgment has been rendered affecting those who have priority in the distribution of assets arising from the sale of this land, and should have been heard.

The judgment is reversed, with directions to set aside the sale, and for proceedings consistent with this opinion.

To petitions for rehearing and for modification of the opinion Judge Pryor delivered the following response of the court:

Counsel, in his petition for a rehearing, calls the attention of the court to that part of the opinion in which it is stated "it was not insisted by counsel that the mortgage to M. C. Johnson, &c., was an exercise of the power of disposition by A. K. Woolley," and says the point was directly made by him, etc. This criticism of the opinion

is just, as it is plain from the brief of counsel that such was his contention, and the court has therefore stricken from the opinion so much of it as alluded to the concession of counsel on that subject.

As to the revivor against or in the name of the widow and children of Frank Woolley or his personal representative, we have to say, in view of the character of the litigation, the opinion must affect all interested, and when the case returns the revivor should be allowed, and the opinion is modified to that extent.

In this action the only question was, were the mortgages, or other writings, executed by A. K. Woolley in execution of the power conferred by the will of his mother? This is not an action for a settlement in the nature of a creditor's bill, but one ignoring the rights of creditors who were entitled to participate in the distribution of A. K. Woolley's estate; and a sale of the remainder interest (so far as one-half of A. K. Woolley's interest is concerned) under a writing that passed no title, and was not, until the power was executed, subject to the debts of A. K. Woolley. The mortgages were passing an equitable interest that at the time belonged to others than the grantor. R. W. Woolley, as appears from the record, is a creditor, and entitled to be heard as to the merits of his claim, and under such circumstances we adhere to the opinion that the sale should be set aside.

The opinion is asked to be reopened as to whether or not the will of A. K. Woolley was an exercise of the power given him by the will of his mother. That question was presented and discussed in the brief of the appellants, and was made necessary as a guide for the chancellor in the court below. The devisees of A. K. Woolley were before the court, and we are not inclined to modify the opinion in that regard.

The petitions for a rehearing and modification are each and all overruled except to the extent indicated.