ANDREW F. LOOMER, TRUSTEE, vs. MARTHA A. LOOMER
ET AL.

Third Judicial District, New Haven, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Having made absolute gifts to his six children, a testator, in the
seventh clause of his will, created a trust estate, consisting of real
property, the net income of which was to be paid over to his
children annually or oftener, in certain specified proportions, "to
be held by said children and their heirs forever." After a certain
son and his wife had deceased and their youngest surviving child
had reached twenty-one, the beneficiaries receiving five eighths of
the income were authorized to terminate the trust, if they chose,
whereupon the trustee was to convey the principal of the trust es-
tate to those entitled to the income, and in the same proportions.
If not so terminated, the trust was to cease thirty years after the
testator's death, when the *corpus* of the property was to be con-
veyed to the several beneficiaries in the aforesaid proportions.
The testator died in 1892 and his six children still survive. Two
of the sons were adjudicated bankrupts in March, 1902, and in
February, 1903, the trustee in bankruptcy, pursuant to an order of
court, sold their interests in the trust estate. In a suit to construe
the will it was *held* :—

1. That in view of the general plan and purpose of the whole will, it
was evidently the intention of the testator that the heirs of such
child as might die during the term fixed for the continuance of the
trust, should—subject to certain specified exceptions—take such
decedent's share of the income.

2. That tested by the statute or common-law rule against perpetuities,
the trust to pay income could not be saved in its entirety, since the
gift to the heirs of the child dying within thirty years from the
testator's death, might not vest within the period prescribed by
law; but that until such death occurred the trust could be main-
tained and the testator's intent carried into effect.

3. That upon the testator's death each of his six children took an
equitable, vested remainder, or cross-remainder, in fee, in a spe-
cific, undivided portion of the *corpus* of the trust property.

4. That the interest of the two bankrupt sons in the income (⅖), as
well as in the *corpus* of the trust property, passed to their trustee
in bankruptcy at the date they were adjudicated bankrupts; while
the vendee of the trustee in bankruptcy was entitled to the income
accruing since his purchase, with the right to a conveyance of the
legal title in fee to two undivided eighths of the trust property
upon the termination of the trust to pay income.

Loomer v. Loomer.

There is no rule which limits the continuance of a trust to any period
of time; but the beneficial interest must vest in the *cestui que trust*
within the time limited by law for the vesting of legal estates.

Argued January 22d—decided March 3d, 1904.

SUIT to determine the construction of the will of Lyman
L. Loomer of Derby, deceased, brought to and reserved by
the Superior Court in New Haven County, *Shumway, J.*,
upon the facts set forth in the complaint and answers, for
the advice of this court.

March 18th, 1892, Lyman L. Loomer of Derby died, leav-
ing a last will dated May 18th, 1891, which has been ad-
mitted to probate. He left surviving him six children,
Martha, Lyman, Andrew, Lowel, Lucy and Minnie, whose
ages ranged from forty-four to sixty-seven years, all of whom
still survive. One daughter predeceased the testator, leav-
ing two children. Two of said surviving children, to wit,
Martha and Lucy, are unmarried. Lyman has been mar-
ried more than twenty years, but is childless. The other
three have been married many years, and all have children
who have passed their majority. March 10th, 1902, Lyman
and Andrew were adjudicated bankrupts in the United
States District Court of Connecticut, and on March 22d,
1902, the defendant Birdseye was appointed trustee of their
assets, and later qualified. February 19th, 1903, said trus-
tee in bankruptcy, by order of court and against the objec-
tions of said bankrupts, sold and conveyed their interests in
the trust estate created under the provisions of paragraph
seven of the will of their father, to the defendant Hubbell.

The first five paragraphs of the will contain absolute
gifts to each of the children save Lowel. The sixth con-
tains a gift of two houses and certain lands in trust for
Lowel and his wife and the survivor of them, for life, and
the remainder over to their children. The seventh para-
graph, which gives rise to the present controversy, is as fol-
lows : " I give, bequeath, and devise to my son, Andrew F.
Loomer, all my lands, buildings, and tenements lying in the
borough of Birmingham on the southerly side of Main or
Second street: to have and to hold the same to him and his

successors and heirs, in trust, and for the following uses
and purposes, to wit : to control and manage said real estate,
and keep the same in good repair, and insured, and rent the
same, and collect the rents and income of the same, pay all
of the necessary current expenses, including one hundred
dollars annually for his services in executing this trust, and
to pay the net income annually, or oftener if the same shall
be received quarterly, as follows : four-eighths or one-half
to my two daughters, Martha A. and Lucy A., and the sur-
vivor of them, and one-eighth to each of the following:
Lyman Harvey, Minnie R. Hulme, Lowel M., and Lucretia,
his wife, as one party, or the survivor of them, and retain
one-eighth of said net income for himself: said sums and
income when so paid to be held by said children and their
heirs forever.

" In the management of said real estate I authorize my
said trustee to collect and receive any insurance money for
any loss that may occur to said property, or any assessments
of benefits or other sums to be received on account of said
estate, and expend the same or any part thereof in repair-
ing or rebuilding any buildings thereon, and to manage said
estate according to his best judgment for the benefit of my
said children.

" Whenever in the judgment of my said trustee said real
estate or any part of the same can be sold at advantage, and
all the adult beneficiaries under this will shall in writing
consent to such sale and conversion of the same into money,
then I authorize my said trustee to sell and convey the same
by good and sufficient deeds of conveyance, and hold the
proceeds of said sale in trust, instead of and in place of said
real estate ; and when my said son, Lowel M., and his wife,
Lucretia, shall have deceased, and the youngest surviving
child, issue of their bodies, shall have reached the age of
twenty-one years, then I authorize and empower my said
trustee, on the request in writing of the beneficiaries entitled
to five-eighths of said income, to terminate said trust, and
convey the principal of said trust estate to those entitled to
the income, in the same proportion as said income is given ;

and if no request shall be so made at the end of thirty years
from my decease, I declare said trust at an end, and direct
said conveyance to the several beneficiaries in said propor-
tions ; and on such conveyance I give and bequeath said
trust estate so held to said several parties, their heirs and
assigns forever."

The eighth paragraph makes provision for the care and
maintenance of the two children of the deceased daughter,
and the ninth paragraph disposes of the rest, residue and re-
mainder equally to his children, the heirs of the body of any
deceased child taking the portion that such child, if living,
would take.

Andrew has qualified and is acting as the trustee under
the provisions of said seventh paragraph. The value of the
trust property is about $50,000.

*Edward A. Harriman*, for Richard H. Hubbell.

*William A. Wright*, for Lyman H. Loomer.

*William S. Downs*, for Andrew F. Loomer.

*Arthur M. Marsh*, for Isaac W. Birdseye, trustee in bank-
ruptcy.

PRENTICE, J.    The questions upon which our advice is
asked arise from the provisions of paragraph seven of the
will.    The paragraph establishes a trust fund and creates a
trust therein.    The six surviving children of the testator
are, beyond question, in terms made the beneficiaries for
their respective lives, subject to the termination of the trust
in the manner prescribed, of specified portions of the annual
income.    Certain rights of survivorship are created.    The
ambiguity in the language employed raises an uncertainty
as to the disposition of income in the event of the death of
certain of the children.    Is no disposition made in anticipa-
tion of such a contingency ; is there to be an accumulation ;
are there rights of survivorship ; or is the share of each de-
ceased child, except as otherwise expressed, given to his or
her heirs ?

In answering these questions we should aim to gather the testator's intent, and to that end we are entitled to look at the whole will and its general plan and purpose as disclosed therein. The testator, in the paragraphs preceding the seventh, had made absolute gifts to all his children save one, created a trust for the benefit of that one and his family, and provided for the care of his grandchildren. It is apparent that his controlling purpose in framing paragraph seven was to provide an assured source of income for his children, being especially mindful in that regard of the claims upon him of his two unmarried daughters; and, that done, to make a final disposition of the property the income from which was devoted to that purpose. It is quite as apparent, from the general scheme of the will, that the testator had no intention of unduly favoring one child or stock over another. With these considerations in mind it is not easy to read paragraph seven throughout, without becoming satisfied that by the use of the words "and their heirs," in connection with the gifts of income, he meant to indicate that in the event of the death of any of his children the heirs of such child, should, subject to the exceptions made, become the beneficiaries of the allotted portion of income in its stead. The language used with respect to the power of sale, and especially the use of the phrase "adult beneficiaries" in that connection, and his language with respect to the final division of the trust fund, all emphasize the correctness of the interpretation indicated. There is nothing in the will to indicate any purpose to accumulate income, and the provisions relating to the final distribution of the trust fund, which are in express terms made applicable to the principal only, sufficiently negative the existence of such a purpose. A purpose to provide for survivorship, except as plainly indicated, is so foreign to everything in the will that it cannot be believed, in the absence of direction to that effect, that the testator intended to adopt a scheme which would inevitably operate to create discriminations between his grandchildren, depending upon the factitious circumstance of the order and time of survival among his children. That the testator made no

provision for these contingencies of death, which, in view of the ages of his children, he must have contemplated, we are bound not to assume without satisfactory and convincing evidence to that effect from the will. Such evidence there is not, as we have observed.

We have next to inquire as to the validity of this trust to pay income. The claimant under the conveyance by the trustee in bankruptcy, contends that it is invalid under the common-law rule against restraints of alienation, since it may continue for the gross term of thirty years. There is no rule which limits the continuance of a trust to any period of time. A trust is no more invalid for the reason that it may continue thirty years than is a life estate or estate in fee simple. The essential thing is that the beneficial interest under the trust vest in the *cestui que trust* within the time limited by law for the vesting of legal estates. Gray on Perpetuities, §§ 232, 322, 412; 2 Wash. on Real Property (6th Ed.), § 1447 ; 1 Perry on Trusts (5th Ed.), § 383 ; *In re Walkerly*, 49 Amer. St. Rep. (n.) 129 ; *Connecticut T. & S. Deposit Co.* v. *Hollister*, 74 Conn. 228 ; *Andrews* v. *Lincoln*, 95 Me. 541.

Applying this test, however, the trust to pay income cannot be saved in its entirety. The gift to the heirs, upon the death of a child within thirty years from the testator's death, is one which might not vest within the life of the child and twenty-one years plus the period of gestation thereafter. *Bates* v. *Spooner*, 75 Conn. 501. It is possible, however, to sever the trust in the manner and for the reasons set out in the recent analogous case of *White* v. *Allen*, 76 Conn. 185, and thus give effect to the testator's intent until the death of either Lyman, Andrew or Minnie, or the survivor of Martha and Lucy, or the survivor of Lowel and his wife, Lucretia, when the trust must terminate and division of the trust property be made to those entitled under the will to receive it, who will receive it as owners in fee simple.

The concluding portions of the paragraph under consideration deal with this subject of the final division. They are not free from ambiguity, but when read in the light of

the testator's intention and testamentary plan, and in connection with the other provisions of the paragraph, it becomes clearly evident that the testator intended by the language he used to give to his children equitable remainders or cross-remainders, in fee, in specific, undivided portions of the trust property, which should vest immediately upon his decease. Upon the termination of the trust, those possessed of the beneficial estate would forthwith become entitled to the legal. The concluding words of the paragraph, which were quite likely incorporated in it to express the purpose of the testator that the title acquired should be an absolute one, cannot, whatever their possible purpose, suffice to give to the testator's language any other intent and meaning than that indicated, which is otherwise so apparent.

It appears, therefore, that the testator's two sons, Lyman H. and Andrew F., at the time of their adjudication as bankrupts, were each, as *cestui que trust*, entitled, under the paragraph of the will in question, to receive one eighth of the net income of the trust estate during the continuance of the trust to pay income as aforesaid, and were each the owner of an equitable remainder in fee in an undivided one eighth of the trust estate, with the right to have the full legal title thereto upon the termination of the trust.

It needs no argument to show that upon the adjudication in bankruptcy of Lyman and Andrew, all their remainder title and interest passed to the trustee in bankruptcy. National Bankrupt Act, § 70a. It is, however, contended that their rights to the income under the trust did not so pass. Whatever may be said upon the much mooted question as to the legality of so-called spendthrift trusts, it is clear that the trust in question possesses none of the attributes of the trusts so described. The beneficial interests are absolute, and left wholly unrestrained and under the control of the beneficiaries. Such equitable estates, we have repeatedly held, are alienable, and may be subjected to the rights of creditors upon attachment and execution. *Ives* v. *Beecher*, 75 Conn. 564, and cases there cited. The equitable interests in question, therefore, passed to the trustee in bankruptcy, who thus,

by virtue of the bankruptcy proceedings, came to stand in the shoes of the two bankrupts as respects their rights under the paragraph of the will in question.

As between the trustee in bankruptcy and the claimant Hubbell, to whom, on February 19th, 1903, the former conveyed the right, title and interest of the two bankrupts in and to the lands in question, we understand that there is no dispute as to their respective rights. The trustee claims that share of the income to which the two bankrupts would have been entitled on February 19th, 1903, had they not been adjudicated bankrupts, and Hubbell claims such share of subsequently-accruing income, and their undivided interests in remainder in the real estate itself. These claims are well founded.

The Superior Court is advised (1) that the defendant Birdseye, as trustee in bankruptcy, is entitled to receive from the trustee under the will two eighths of the net income upon the trust estate designated in the seventh paragraph of the will, which accrued prior to February 19th, 1903, and had not been paid over at the time of the adjudications in bankruptcy, and (2) that the defendant Hubbell is entitled to receive from said trustee, when the same shall become payable by the provision for distribution, two eighths of all the net income which has accrued from said trust estate since said February 19th, 1903, and from time to time, as payable, the like proportion of said income until the death of either Lyman, Andrew or Minnie, or the survivor of Martha and Lucy, or the survivor of Lowel and his wife, Lucretia, and is the owner of an equitable remainder in fee in two undivided eighths of said trust estate limited upon the event of death which shall as aforesaid terminate his right to receive said share of income, with the right to the legal title in fee in said two undivided eighths upon said event, and to a conveyance thereof at that time from said trustee.

No costs will be taxed in this court.

In this opinion the other judges concurred.