[Civ. No. 5267. First Appellate District, Division Two.—February 27, 1926.]

FRANK H. HUNT et al., Appellants, v. EMILY LAWTON et al., Respondents.

[1] TRUSTS—LIFE ESTATE—CONTINGENT REMAINDERS—CONSTRUCTION OF DEED.—Where the husband, being the owner of real property, executes a deed conveying the same to his wife and her successor or successors, to have and to hold all and singular the said premises, together with the appurtenances unto the said grantee, "in trust, to farm or let the said land and out of the income derived therefrom to pay all taxes and assessments of every kind and nature and all expenses and other charges which . . . may be proper or necessary in the care of said lands, and to pay the

---

1. See 25 Cal. Jur. 309.

residue of the income derived from the said lands to . . . the daughter of the grantor and grantee . . . , for and during the term of the natural life of the grantee . . . , and upon the death of the grantee . . . , then the said premises . . . shall vest in and become the property of" the said daughter, "if she shall then survive, and if she shall not survive the said lands shall vest in and become the property of" her children "share and share alike," a legal estate for life is created in the wife, with beneficial interest in the daughter and contingent remainders to said daughter and her children, one or the other of which would become vested upon the termination of the life estate.

[2] ID.—LIMITATION OF ESTATE CONVEYED—ADDENDUM CLAUSE.—While the granting clause in said deed purports to convey the property to the wife "and her successor or successors," the *addendum* or proviso in said deed that upon the death of the grantee the property shall vest in the daughter must control the conveyancing clause or premises, even to the extent of destroying the effect of the same.

[3] ID.—POWER TO LEASE—LIMITATION TO LIFE ESTATE.—Under said deed the provision giving the wife the right to "let" the land does not broaden her estate for life into an estate in fee, but the power to lease is limited by the duration of her life estate.

[4] ID.—BANKRUPTCY SALE—ESTATE OF PURCHASER—CONTINGENT INTERESTS OF UNBORN CHILDREN.—Where, after the then living children of the daughter of said grantor and grantee became of age, they conveyed their interest in the property to their mother and thereafter the latter was adjudicated a voluntary bankrupt and her interest in the property was sold by the trustee in bankruptcy, the purchaser at such sale acquired not only her beneficial interest in the life estate in said property, but also the contingent remainders granted to herself and her said living children, who had conveyed to her; but such proceedings could not affect the contingent interests of any other children who might thereafter be born to and survive her.

[5] ID.—DURATION OF TRUST—CONTINGENT REMAINDERS.—As the grantee under said trust deed was to manage the property, rent or lease the same, pay. taxes, assessments and charges, and thus preserve it for the contingent remaindermen, including children who might yet be born, the purchaser at the bankruptcy sale of the interests of the beneficiary of the life estate and the contingent remainders of her then living children, who had theretofore conveyed their interests to her, did not acquire the interests of the children who might yet be' born, and the trust did not terminate but continued for their benefit.

4. Termination of trust by acquisition of estate or interest in remainder by beneficiary, note, 2 A. L. R. 1420.

[6] ID.—VOLUNTARY TERMINATION OF TRUST.—Under said trust deed, as some of the possible contingent beneficiaries might later come into existence, the trust was not terminated by the act of the trustee in transferring all her right, title, and interest in the property to the holder of the beneficial interest in the life estate.

[7] ID.—QUIETING TITLE—JUDGMENT.—In an action by said purchaser at the bankruptcy sale to quiet title to the property as against the trustee under said trust deed, the bankrupt (the former owner of the beneficial interest in the life estate and a contingent remainder) and her then living children, who had conveyed their interests to her, it is error to hold that plaintiff has no right or title to the property, but a decree should be entered that said trustee is the owner and holder of the legal title to the property for the period of her natural life, as a trustee to pay the net income therefrom to plaintiff, and that plaintiff is the owner and holder of the contingent interests in remainder which were granted to said bankrupt and her said then living children.

---

(1) 39 Cyc., p. 208, n. 26, 27, p. 232, n. 36, p. 233, n. 37.   (2) 39 Cyc., p. 194, n. 7.   (3) 39 Cyc., p. 387, n. 85, p. 388, n. 88.   (4) 7 C. J., p. 115, n. 54, p. 118, n. 77, 78, p. 242, n. 35, 36; 21 C. J., p. 927, n. 23, 24.   (5) 7 C. J., p. 242, n. 36; 32 Cyc., p. 1381, n. 91 New; 39 Cyc., p. 97, n. 57, p. 102, n. 92.   (6) 39 Cyc., p. 102, n. 89. (7) 32 Cyc., p. 1381, n. 91 New.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Burnell, Judge. Reversed.

The facts are stated in the opinion of the court.

J. L. Fleming, R. J. Gardner, C. C. Haskell and Leonard, Surr & Hellyer for Appellants.

S. F. Macfarlane and Roland H. Mulford for Respondents.

LANGDON, P. J.—This is an appeal from a judgment in favor of the defendants in an action to quiet title to certain real property in Los Angeles County, California.

The facts are undisputed, the evidence consisting mainly of recorded documents in the chain of title to the property, from which it appears: That on June 12, 1897, Gerhardt H. Kallmeyer, being the owner of the real property in controversy, executed a deed to his wife, Sarah Jane Kallmeyer,

---

6.   See 26 R. C. L. 1211.

one of the defendants herein, conveying the same to her and her successor or successors "to have and to hold all and singular the said premises, together with the appurtenances unto the said party of the second part, in trust, to farm or let the said land and out of the income derived therefrom to pay all taxes and assessments of every kind and nature and all expenses and other charges which in the judgment of the said party of the second part may be proper or necessary in the care of the said lands, and to pay the residue of the income derived from the said lands to Emily Lawton, the daughter of the grantor and grantee herein, for and during the term of the natural life of the grantee herein, and upon the death of the grantee herein, then the said premises hereby conveyed to her in trust for the benefit of the said Emily Lawton shall vest in and become the property of the said Emily Lawton, if she shall then survive, and if she shall not survive the said lands shall vest in and become the property of the children of said Emily Lawton share and share alike."

At the time of the execution of the aforementioned deed Emily Lawton had two children, Alfred Homer Lawton and David Edward Lawton, who are defendants in this action, and she has never had any other children.

On January 31, 1914, the two children, Alfred and David, each being over twenty-one years of age, executed to their mother, Emily Lawton, a quitclaim deed, purporting to release and convey to her all their estate, right, title, and interest, use, benefit, privilege, and demand in and to the property described in the trust deed from Gerhardt Kallmeyer to Sarah Jane Kallmeyer.

On January 22, 1914, Sarah Jane Kallmeyer executed an instrument purporting to be a release of said trust and purporting to remise, release, surrender, assign, and set over to Emily Lawton all of the estate, right, title, and interest, use, benefit, privilege, and demand which she, as trustee, had in the premises.

Upon the execution of the quitclaim deed from Alfred and David to their mother, Emily Lawton, and the purported release of trust by the trustee, Sarah Jane Kallmeyer, to her daughter, Emily, the said Emily borrowed three thousand five hundred dollars from R. P. Shields and secured pay-

ment thereof by a mortgage upon the property in controversy.

On or about August 25, 1917, the said Emily Lawton was adjudicated a voluntary bankrupt, and thereafter the property involved was sold by her trustee in bankruptcy to the said R. P. Shields, and a deed was executed to him by said trustee on February 20, 1919, purporting to convey all the right, title, and interest of the said Emily Lawton in the property.

Shields executed a satisfaction of his mortgage and thereafter executed a deed conveying the property to the plaintiffs.

In May, 1920, Sarah Jane Kallmeyer executed to plaintiffs a quitclaim deed of the property.

Some of the defendants were in possession of the property at the time of the commencement of this action and refused to surrender the possession thereof to plaintiffs, who brought this action to quiet their title and to recover possession of the property. It was resisted by the defendants upon the theory that the trust created by the first instrument mentioned herein was still valid and subsisting and that the subsequent instruments herein mentioned were without force and effect. The trial court adopted this view and held that the plaintiffs had no right or title to the property.

[1] The first question presented is as to the nature of the estate of Sarah Jane Kallmeyer under the trust deed. The appellants contend it was a life estate in trust with remainders over to Emily Lawton or her children. Respondents maintain that it was the legal title to the fee, subject to the beneficial interest of Emily. If their position be correct, the estate to Emily or her children after the death of Sarah Jane Kallmeyer was a limitation upon a fee. It is to be observed that the trust deed provided that ''upon the death of the grantee herein, then the said premises hereby conveyed to her in trust for the benefit of the said Emily Lawton *shall vest* in and become the property of the said Emily Lawton, if she shall then survive, and if she shall not survive, the said lands *shall vest* in and become the property of the children of said Emily Lawton, share and share alike.''

It would seem upon reason and authorities to be hereafter considered that this instrument created a legal estate for life in Sarah Jane Kallmeyer, with beneficial interest in

Emily Lawton and contingent remainders to Emily Lawton and her children, one or the other of which would become vested upon the termination of the life estate.

In *Morffew* v. *San Francisco & S. R. R. Co.,* 107 Cal. 587 [40 Pac. 810], the court had under consideration the *quantum* of estate taken under a decree of distribution by a trustee, to whom lands were distributed for the term of her natural life, in trust, to apply the income for the support and education of certain children. The court said: "But the quantity of interest which passes to the trustee in case of an express trust is commensurate with the necessities of his office; the trustee shall have an estate in fee, if that is necessary, to enable him to perform the duties imposed upon him, although it is not in terms given to him by the instrument creating the trust; on this principle a devise of lands in trust to sell clothes the trustee with the fee, because necessary to the execution of the trust. The rule being compendiously stated that the trustee 'will take an estate adequate to the execution of the trust—no more or less.' (Perry on Trusts, sec. 320; *Young* v. *Bradley,* 101 U. S. 787 [25 L. Ed. 1044].)"

The opinion from which quotation has just been made, states further: "And the will does not impose upon the widow any other duty which requires for its discharge an estate in the land greater than for her life. So that there is no enlargement of her life estate to be implied from the necessities of the trust. And the life estate in the trustee being created by express words in the will, with limitation over, it is not enlarged to a fee by the power of sale. (*Kennedy* v. *Kennedy,* 159 Pa. St. 327 [28 Atl. 241]; *Foos* v. *Scarf,* 55 Md. 310, and numerous authorities cited; *Payne* v. *Johnson,* 95 Ky. 183, 184 [24 S. W. 238]; *Hatfield* v. *Sohier,* 114 Mass. 48.)

"It is suggested by respondents that the trustee took the fee in virtue of the provision of section 863 of the Civil Code. But, as said of a like statute by the court of appeals of New York: 'This section does not prevent a valid limitation of a remainder to the beneficiaries of a trust to take effect upon its termination. The declaration that a valid express trust shall vest the whole estate in the trustees, and that the beneficiaries shall take no estate or interest in the land, clearly refers, as the subsequent sections show, to the

trust estate and not an interest in the land not embraced in the trust.' (*Stevenson* v. *Lesley*, 70 N. Y. 516, 517.) So here, we think that said section 863 has application only to the particular estate in trust, and not to the remainder in the plaintiffs.''

In *Keating* v. *Smith*, 154 Cal. 186, 192 [97 Pac. 300, 304], it is said: "The estate which a trustee takes by virtue of section 863 is not necessarily a fee, but only such estate as is required for the execution of his trust. (*Morffew* v. *San Francisco etc. R. R. Co.*, 107 Cal. 587 [40 Pac. 810].) Here the trustees are given an estate expressly limited in duration to the minority of the children.''

An examination of the trust instrument in the instant case discloses that the only duties of the trustee were to farm and let the property, pay taxes, expenses, etc., and then pay the net income over to the beneficiary of the trust during the life of the trustee, and, therefore, a legal estate for life was sufficient for the full and free execution of this trust.

In *Barnett* v. *Barnett*, 104 Cal. 298 [37 Pac. 1049], the court had under consideration language in a deed as follows: ''give, grant, alien and confirm unto the said party of the second part and to his heirs all those certain lots, pieces or parcels of land . . . to have and to hold, all and singular, the said premises, together with appurtenances, unto the said party of the second part for and during his natural life, and to the issue and heirs of the body of said party of the second part.'' The question arose whether the grantee took a life estate or a fee. It was held that he took a life estate, the court saying: ''The intention of the parties to the grant is to be gathered from the instrument itself, and determined by a proper construction of the language used therein, but for the purpose of ascertaining this intention the entire instrument, the *habendum* as well as the premises, are to be considered, and, if it appear from such consideration that the grantor intended by the *habendum* clause to restrict or limit or enlarge the estate named in the granting clause the *habendum* will prevail over the granting clause. (*Faivre* v. *Daley*, 93 Cal. 670 [29 Pac. 256]; *Pelissier* v. *Corker*, 103 Cal. 516 [37 Pac. 465].)  'It is in such case to be considered as an *addendum* or proviso to the conveyancing clause, which by a well settled rule of construction must control the conveyancing clause or premises, even to the extent of destroy-

ing the effect of the same.' (*Bodine* v. *Arthur,* 91 Ky. 53
[34 Am. St. Rep. 162, 14 S. W. 904].)''

[2]    The case last cited is interesting upon our problem
because in the instant case, it will be observed, that while
the granting clause in the trust deed to Sarah Jane Kall-
meyer conveys to her ''and her successor or successors,'' the
deed further provides that upon the death of the grantee, the
property shall vest in Emily Lawton, and, as stated in *Bodine*
v. *Arthur, supra,* this *addendum* or proviso to the conveyanc-
ing clause, by a well-settled rule of construction, must con-
trol the conveyancing clause or premises even to the extent
of destroying the effect of the same.

A case presenting a principle similar to the one presented
by the instant case is *Estate of Aldersley,* 174 Cal. 366 [163
Pac. 206], where it was provided that after the death of
the *cestui que trust,* the premises should be conveyed to the
trustees themselves, or the survivors. This trust to convey
was void under the decision of the Fair case, 132 Cal. 523
[84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000], and it was
held, therefore, that the grantor had merely disposed of an
estate for the life of the *cestui que trust,* and the reversion
was in himself. It was recognized by the court that had the
trust deed provided for the vesting of the estate in the
designated remaindermen, instead of providing for a con-
veyance to be made to them, the disposition would have been
valid and the trustees would have taken an estate only for
the life of the *cestui que trust,* the court saying: ''But the
deeds after employing words of absolute conveyance clearly
restrict the fee conveyed to the grantees to and for the pur-
poses of the trusts. The actual title conveyed was therefore
commensurate for this purpose and no more.'' In other
words, the court held that the deed conveyed to the trustees
only an estate commensurate with the performance of the
trust, which was an estate for the life of the *cestui que trust.*
By analogy, the trustee in the instant case takes only an
estate commensurate with the performance of the trust,
i. e., an estate for her natural life.

But a most persuasive authority, indeed a controlling one
upon this court, is the decision in the *Estate of Fair,* 132
Cal. 523 [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000].
That most carefully considered decision involved a trust
in which property was given to trustees to hold in trust

during the lives of the testator's children and the survivor of them, and "upon the death of such survivor to transfer and convey" to certain grandchildren, etc. It was held this created a trust to convey after the death of the testator's children which was void under the laws of this state, and hence the whole trust failed, it being one entire scheme. In the various majority and dissenting opinions of record in that case, it was repeatedly and consistently recognized that had the testator provided that upon the death of the last survivor of his children, the property should go to or vest in the ultimate beneficiaries, it would have been held that the trustees had taken an estate for the lives of the children only, and the trust would have been valid, even though there had been an added direction to the trustees to convey to the ultimate beneficiaries, because such conveyance would have been treated merely as an assurance of title. But because the will in that case did not contain a provision vesting the remainder in the ultimate beneficiaries after the termination of the life estates—a provision found in the trust deed in the instant case—the court held that the trust included a trust to convey to the ultimate beneficiaries, and was void. It seems unnecessary to lengthen this opinion by quotations from this well-known California decision. The decision is lengthy, the facts are complicated, and any quotation to be intelligible would occupy much space in this opinion. It is sufficient to say that the Fair case repeats, emphatically, in several places that a grant to trustees similar in principle to the one under consideration in the instant case would vest a life estate in the trustees with remainders in the ultimate beneficiaries. It would seem that further citation of authority upon this point is needless.

The case of *Fatjo* v. *Swasey*, 111 Cal. 628 [44 Pac. 225], is relied upon by respondents to overcome the plain effect of the Fair case and the other authorities cited herein. It is asserted that the Fatjo case is analogous to the instant case and that there the *cestui que trust* was held to have no mortgageable interest. That case seems to us clearly differentiable from the instant case. In the Fatjo case the devise was to executors of a will "to sell" the real property. It is conceded in the authorities cited herein (*Morffew* v. *San Francisco R. R. Co., supra*) that a devise of lands in trust to sell clothes the trustee with the

fee, because necessary to the execution of the trust. Furthermore, in the Fatjo case, the *cestui que trust* executed a mortgage. The contest was between the purchaser at the mortgage foreclosure sale and the trustee. It is apparent that the *cestui que trust* in that case had nothing but an equitable estate in the mortgaged property, for by the terms of the will she had no interest in remainder until after the property had been sold and the proceeds segregated into different parts, etc. When she gave a mortgage, she could mortgage nothing but her equitable interest—that being all she owned—but she attempted to mortgage the combined legal and equitable interests in the property and when the mortgage was foreclosed, it was foreclosed against the full title to the property, and as the mortgagor never owned this full legal and equitable title, she could not mortgage it, and the purchaser at the foreclosure sale, necessarily, could not maintain his claim to the property. The instant case is entirely different in principle. The appellant here is not claiming under a mortgage foreclosure, but as the purchaser at a sale by the trustee in bankruptcy. As such, he was granted all the right, title, and interest of Emily Lawton. This does not include the legal interest of the trustee for the period of her life, as we shall consider later, but merely what Emily Lawton owned—her equitable estate during the life of the trustee and her contingent remainders granted to her by the trust deed and the subsequent deeds from her sons. While the distinction between the Fatjo case and the instant case seems to us to be very definite and clear, regardless of this fact, it is apparent that if the Fatjo case contains any language in conflict with the holding in the Fair case, this court is bound by the latter, which is a later authority and, upon its face, a better considered one.

[3] Respondents advance the argument that as the trust instrument gives the trustee the power to "let" the land, she had the right to lease it and this required her to take an estate in fee. We cannot agree with this position. In 28 Am. & Eng. Ency. of Law, 2d ed., 1008, the rule is stated: "In the absence of express power from the instrument, the trustees cannot grant a lease or provide for a renewal to extend beyond the life of the trust estate, but such a lease, if made, may be sustained to the extent of the trust estate." The case of *South End Warehouse Co.* v. *Lavery,* 12 Cal.

App. 449 [107 Pac. 1008], is also in point. From these
authorities it seems clear that the estate of the trustee is not
broadened by the power to lease, but the power to lease
is limited by the duration of the trustee's estate.

[4] The title of plaintiffs' predecessor in interest, if any,
was acquired more than three years after the conveyance
of the contingent interests of Alfred and David to their
mother, pursuant to proceedings duly and regularly had in
the matter of the voluntary bankruptcy of Emily Lawton,
in which proceedings he purchased, according to the stipula-
tion of the parties hereto, "all the right, title, interest and
estate of said Emily Lawton in and to the property men-
tioned and described in the complaint." This sale was duly
confirmed by the referee in bankruptcy. Emily Lawton's
right, title, and interest in the property at the time of this
sale consisted of her beneficial interest during the lifetime
of Sarah Jane Kallmeyer, the trustee, and the contingent
remainders granted to herself and to her sons, Alfred and
David, who had conveyed to her. There can be no question
that the contingent interests of Alfred and David Lawton
passed to their mother, Emily Lawton, by their deeds to her,
and such interests, together with the original contingent in-
terest of Emily Lawton, passed to plaintiffs by reason of the
conveyance hereinbefore recited. "Future interests pass by
succession, will and transfer in the same manner as present
interests." (Sec. 699, Civ. Code.) See, also, *Le Breton* v.
*Cook,* 107 Cal. 410, 420 [40 Pac. 552]; *Gray* v. *Union Trust
Co.,* 171 Cal. 637, 642 [154 Pac. 306]. "And the interest
will pass (to the trustee in bankruptcy) although it may
be subject to a contingency such as the contingency that the
remainderman, to take, must survive the life tenant." (1
Remington on Bankruptcy, sec. 972, p. 545.)

Conceding that the trust deed granted contingent re-
mainders not only to Alfred and David Lawton, but to any
other children of Emily Lawton who might survive her,
there were no other children at the time this action was
brought and plaintiffs concede that there is a legal possibility
of their interest in the property being defeated, in part, by
the birth of other children of Emily Lawton who might
survive her and whose contingent interests are not involved
and cannot be affected by this proceeding.

We have cited authorities to show that the contingent remainders held by Emily Lawton were alienable and passed to plaintiffs by the successive transfers appearing in the record. Another question presented by the appeal is whether her beneficial interest in the property during the life of her mother also passed through the trustee in bankruptcy to plaintiffs. We think it did.

"Where one for whom property is held in trust becomes a bankrupt, his entire interest in the trust estate passes to the trustee in bankruptcy, and such ownership draws with it the right of possession." (7 Cor. Jur. 118.)

"If an equitable tenant for life becomes bankrupt or insolvent, all his interest goes to his assignees, and the trustee must hold it subject to their disposition; unless the property is so given that it goes over upon the bankruptcy of the *cestui que trust.*" (2 Perry on Trusts, 6th ed., sec. 555.)

"Therefore, when an equitable interest is once vested in the *cestui que trust,* he may dispose of it, or it may pass to his assignees by operation of law, if he becomes a bankrupt." (Id., sec. 386.)

Section 867 of the Civil Code provides: "The beneficiary of a trust for the receipt of the rents and profits of real property, or for the payment of an annuity out of such rents and profits, may be restrained from disposing of his interest in such trust, during his life or for a term of years, by the instrument creating the trust."

In *Fatjo* v. *Swasey,* 111 Cal. 628, 637 [44 Pac. 225, 227], it is said: "Up to the time of the amendment this interest in the rents and profits could not be transferred, but now it may be unless restrained by the instrument creating the trust."

In *Blackburn* v. *Webb,* 133 Cal. 420 [65 Pac. 952], the court said: "It is also true that under section 867 of the Civil Code, as it now reads, the beneficiary of a trust for the receipt of the rents and profits of real property may transfer his right thereto (*Fatjo* v. *Swasey,* 111 Cal. 628 [44 Pac. 225]), notwithstanding the provisions of section 863 of the Civil Code."

It is apparent that there is no provision in the trust deed under consideration here which inhibits Emily Lawton from transferring her beneficial interest thereunder. She could sell, assign, convey, or encumber such interest for any pur-

pose she saw fit, and under the circumstances here and the authorities heretofore cited, it passed to her trustee in bankruptcy and through him to the plaintiffs.

"The beneficial interest of a bankrupt in property held in trust for him passes to his trustee in bankruptcy." (1 Remington on Bankruptcy, sec. 973, p. 545.)

A case similar to the instant one is found in *Loomer* v. *Loomer*, 76 Conn. 522 [57 Atl. 167]. The facts appear from the following extract from the decision: "It appears, therefore, that the testator's two sons, Lyman H. and Andrew F., at the time of their adjudication as bankrupts, were each, as *cestuis que trustent*, entitled under the paragraph of the will in question, to receive one-eighth of the net income of the trust estate during the continuance of the trust to pay income as aforesaid, and were each the owner .of an equitable remainder in fee in an undivided one-eighth of the trust estate, with the right to have the full legal title thereto upon the termination of the trust.

"It needs no argument to show that, upon the adjudication in bankruptcy of Lyman and Andrew, all their remainder, title and interest passed to the trustee in bankruptcy. (National Bankruptcy Act [Act July 1, 1898, c. 541, sec. 70a, 30 Stats. 565, U. S. Comp. St., 1901, p. 3451].) It is, however, contended that their rights to the income under the trust did not so pass. Whatever may be said upon the much-mooted question as to the legality of so-called spendthrift trusts, it is clear that the trust in question possesses none of the attributes of the trusts so described. The beneficial interests are absolute, and left wholly unrestrained and under the control of the beneficiaries. Such equitable estates, we have repeatedly held, are alienable, and may be subjected to the rights of creditors upon attachment and execution. (*Ives* v. *Beecher*, 75 Conn. 564 [54 Atl. 207], and cases there cited.) The equitable interests in question, therefore, passed to the trustee in bankruptcy, who thus, by virtue of the bankruptcy proceedings, came to stand in the shoes of the two bankrupts, as respects their rights under the paragraph of the will in question.

"As between the trustee in bankruptcy and the claimant Hubbell, to whom, on February 19, 1903, he conveyed the right, title and interest of the two bankrupts in and to the lands in question, we understand that there is no dispute

as to their respective rights. The trustee claims that share of the income to which the two bankrupts would have been entitled on February 19, 1903, had they not been adjudicated bankrupts; and Hubbell claims such share of subsequently accruing income and their undivided shares in remainder in the real estate itself. These claims are well founded.''

It follows from the foregoing discussion that the plaintiff in the instant case succeeded to all the rights of Emily Lawton as *cestui que trust* under the deed of trust, as well as all interest in remainder granted to her and to her children, Alfred and David.

[5] One other question remains to be determined and that relates to the termination of the trust. Appellant contends that the trust is terminated because its purpose has ceased—that its object was to pay the income from the property to Emily Lawton—and since her beneficial interest has passed to plaintiffs, there is no useful purpose to be served by continuing the trust in force and effect. This argument loses sight of the fact that the trustee was to manage the property, rent or lease the same, pay taxes, assessments, and charges, and thus preserve it for the contingent remaindermen. While the contingent interests of Emily Lawton and Alfred and David Lawton have passed to plaintiffs, there remain outstanding contingent interests of children who may yet be born to Emily Lawton and survive her at the time of the death of the trustee. Such interests have not passed to plaintiffs and the trust continues for their protection. The case of *Fletcher* v. *Los Angeles Trust & Sav. Bank,* 182 Cal. 177 [187 Pac. 425], presents a similar question. We do not agree with appellant's differentiation of the two cases. In principle the cases are the same, although there is some variation in the facts. In the Fletcher case the court refused to terminate a trust under which Mrs. Fletcher was to receive the net income of property during her lifetime, with remainders over to her children. The refusal of the court was based upon the legal possibility of Mrs. Fletcher, thereafter, having children, and hence all the beneficiaries or possible beneficiaries were not *sui juris* and before the court consenting to the termination.

We conclude, therefore, that the trust created by the deed from Gerhardt H. Kallmeyer to Sarah Jane Kallmeyer is not terminated.

[6] But it is also argued that the trustee, by the execution of the instrument transferring all her right, title, and interest in the property to Emily Lawton resigned as trustee and .terminated the trust. The foregoing discussion disposes of the last contention. The trust was not terminated by the consent of the trustee and the beneficiaries, because some of the possible beneficiaries may later come into existence.

As to the discharge of the trustee, we quote the following from Perry on Trusts (6th ed., vol. 1, sec. 274, p. 470) : ''If a trustee once accepts the office, he cannot by his sole action be discharged from his duties. Having once entered upon the management of the trust, he must continue to perform its duties until he is discharged in one of three ways: first, he may be removed and discharged, and a new trustee substituted in his place, by proceedings before a court having jurisdiction over the trust; second, he may be discharged, and a new trustee appointed, by the agreement and concurrence of all the parties interested in the trust; and, third, he may be discharged, and a new trustee appointed, in the manner pointed out in the instrument creating the trust, if it makes any provisions upon that subject. Mere abandonment of the trust will not vest the trust property in the hands of his cotrustee, nor relieve a trustee from liability.''

[7] The judgment appealed from is reversed with directions to the trial court to enter a decree that the defendant Sarah Jane Kallmeyer is the owner and holder of the legal title to the property in controversy for the period of her natural life, as a trustee, however, to pay the net income therefrom to plaintiffs, who are the owners and holders of the beneficial interest in said property during the lifetime of the said trustee, and that the plaintiffs are the owners and holders of the contingent interests in remainder after the termination of said legal life estate, which were granted to Emily Lawton and Alfred and David Lawton by the deed from Gerhardt H. Kallmeyer to Sarah Jane Kallmeyer.

Nourse, J., and Sturtevant, J., concurred.