## Snively's Trustee, et al. v. Snively.

(Decided February 2, 1915.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. **Wills—Construction of—Life Estate.**—Where a testatrix devised to her granddaughter, in trust, a portion of her estate, with the provision that "all the balance of said portion to be paid over to the Louisville Trust Company and held by said company in trust for the use and benefit of Ella Bull Snively during her life, with power to dispose of same by her last will and testament," this gave to the devisee a life estate, with the power of disposition, and not the fee in the estate covered by the devise.

2. **Wills—Construction of—Life Estate—Power of Disposition.**—When the estate is devised for life, either expressly or by necessary inference gathered from the intention of the testator as expressed in the will, the power of disposition in the devisee will not convert the estate into a fee; but if the devise does not specifically or by necessary inference create a life estate, the power of disposition invests the devisee with the fee, and these rules apply with equal force whether the estate is given immediately to the devisee or placed in the custody of a trustee for his benefit.

RANDOLPH H. BLAIN for appellants.

McDERMOTT & Ray for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Mrs. Mary Bull, in the second and third clauses of her last will, provided as follows:

"Item Second. I hereby direct my executor to convey or cause to be conveyed to the Louisville Trust Company, trustee, for the use and benefit of my daughter, Mary D. Creamer, my house and lot and all of the household and kitchen furniture therein, being No. 2440 Park Place, Louisville, Kentucky, for and during the life of my said daughter, Mary D. Creamer, usually known as Mary D. Snively, and the remainder, at her death, to be held by the Louisville Trust Company in trust for my said granddaughter, Ella Bull Snively, with full power to my said granddaughter, Ella Bull Snively, to dispose of said real estate by her last will and testament, and the said Louisville Trust Company shall keep all taxes, insurance and repairs on said real estate paid.

"Item Third. I direct my executor to pay to the Louisville Trust Company, in trust for my granddaughter, Ella Bull Snively, the net amount of my policy in the Equitable Life Insurance Company, amounting to about $5,000. The same to be held by the Louisville Trust Company for my granddaughter, she to receive the net income from same until she is thirty years of age, at which time she is to receive the principal sum free of trust."

In the fourth clause the testatrix directed that the remainder of her estate be divided into three parts, one portion going to Robert F. Bull, another to Mrs. Creamer and her children, and the other to Edward Bull's children.

In the fifth paragraph she provided that "I direct my executor to dispose of the second portion above referred to as follows: To pay to my daughter, Ella G. Sevier, the sum of two thousand dollars in cash, to my daughter, Mary D. Snively-Creamer, the sum of five hundred dollars cash, and to my grandson, John Bull Snively, two hundred dollars. These amounts to be paid as soon after my death as practicable.

"All the balance of said portion to be paid over to the Louisville Trust Company and held by said company in trust for the use and benefit of Ella Bull Snively during her life, with power to dispose of same by her last will and testament."

And in a codicil she made this provision: "Having bequeathed to my grandchild, Ella Bull Snively, a life interest in my present residence, No. 2440 Park avenue, after the death of her mother, Mrs. Mary D. Snively,

it is my will that said Item Two of the above will be amended as follows, to-wit:

"That if my said grandchild, Ella Bull Snively, should leave any children, this house and lot shall descend to said children upon her death. If she should leave no children surviving her, she may dispose of the same by last will and testament to any of my descendants, but she shall have no right to dispose of the said house and lot to strangers or any other persons other than some of my lineal descendants."

In the division of the property as directed in clause four, there was paid to the Louisville Trust Company, as trustee of Ella Bull Snively, $5,650. Some time after this division and payment Ella Bull Snively, in the litigation pending about the settlement of the estate, asserted, in a pleading filed for that purpose, the claim that under the will she was entitled to the property described in clause five of the will in fee simple, and she asked that the trustee be required to deliver the same to her free of any trust.

The question at issue coming up on a demurrer to the pleading of Ella Bull Snively, the chancellor held that she took the fee in this estate and entered a judgment that "all the property, including money, notes, bonds, securities and choses in action now held by the Louisville Trust Company as trustee for the said Ella Bull Snively under item five of the will of said Mary A. Bull rightfully belongs to said Ella Bull Snively, unconditionally, absolutely, and in fee simple, and that the trust in said Louisville Trust Company under said will was a dry trust and not enforcible, and that the said Ella Bull Snively recover of the Louisville Trust Company, trustee, free of said trust, all money, notes, bonds, stocks, and choses in action now held by said Trust Company in trust for her; to have and to hold in fee simple and free of any trust."

Complaining of this judgment, the Trust Company prosecutes this appeal, insisting that under the will Ella Bull Snively took only a life estate in the property described in clause five, with power to dispose of the same by her last will and testament.

It will be observed that there is no devise over after the death of Ella Bull Snively, and therefore it is further insisted by counsel for appellant that if she should die without having disposed of her property by her last will

and testament, the estate would vest in the legal heirs of the testatrix, and, consequently, having a contingent interest in this estate, these heirs were necessary parties to this suit.

This alleged defect in parties is not, however, very material, because if the estate was left in the hands of the trustee and Ella Bull Snively took only a life estate and did not dispose of it by will, it would go to these heirs, and if she took the fee, that would dispose of the interest of the heirs, and so the issue raised by the trustees presents fully every defense to the claim of Ella Bull Snively that could have been presented if the heirs had been made parties.

The real question in the case is, did Ella Bull Snively take a fee or only a life estate with power of disposition?

It would appear from the reading of clause five that the testatrix intended to do two things in respect to the estate given to Ella Bull Snively, namely, to give her the use and benefit of the fund during her life, and also the power to dispose of it by will. This is the ordinary and natural meaning that we think should be given to the words used by the testatrix in the last paragraph of this clause. There is no substantial difference in respect to the title vested in Ella Bull Snively by clause two and clause five. One of these clauses relates to real property and one to personal estate, but in each of them it is provided that the estate given should be held in trust for Ella Bull Snively with power to dispose of the same by will. It is true that in clause two the trustee is directed to keep all taxes, insurance and repairs paid on the real property therein disposed of, while in clause five there is no particular direction given to the trustee describing its control over the property or its duties. But the fact that the trustee was directed in clause two to pay taxes, insurance and for repairs does not really add anything to either the duty or power of the trustee, because the law, in the absence of this direction, would impose the performance of these duties.

If the words "during her life" had not been inserted and clause five had read that the property was to be held "by said company in trust for the use and benefit of Ella Bull Snively, with power to dispose of same by her last will and testament," then the construction of this clause would be controlled by the rule announced in Con-

stantine v. Moore, 23 Ky. L. R., 369. In that case the will read:

"In consideration of the love and affection I h e for my beloved wife, I give and bequeath unto her all my property I may die possessed of, of every description, real, personal and mixed, to have the same for her benefit, to control the same during her life as she may see proper, free from the claim of every person or persons, and to dispose of the same as she may see proper at her death." And the court said that the testator, having given the fee in the first of the clause, the words "to control the same during her life as she may see proper, free from the claim of every person or persons, and to dispose of the same as she may see proper at her death," were merely explanatory of the preceding part of the clause; that these words were not a qualification of the fee already given, but were added to make sure the preceding clause would not be misunderstood. But here the will expressly provides that the devisee shall only have the estate "during her life, with power to dispose of same by will."

In Robbins v. Robbins, 10 Ky. L. R., 209, the testator directed his executor to sell his Chicago property as soon as he thought advisable for the interest of his wife, and when sold directed "that he forthwith invest the proceeds of said sale in United States bonds, in the name of said wife, and for her benefit. She will, at no time, loan any of the proceeds of said sales of said real estate to any person or persons whatever, but is to have the interest on said bonds to use as she may desire." In another clause he directed that if the Chicago estate was not sold that the rents were to go to his wife to use as she might desire. In holding that the wife took the fee and not a life estate, the court said that it was manifest from the reading of the entire will that the testator's intention was to dispose of his whole estate, and there was no indication of any purpose on his part to limit the estate of his wife, there being no children, to a life estate.

The essential difference between that case and this lies in the fact that here the testatrix expressly provides that the devisee shall hold the estate "during her life."

The case of Fristoe v. Laytham, 18 Ky. L. R., 157, can hardly be regarded as authority for the proposition

asserted by counsel for appellee in this case, as it appears from the opinion that the parties interested in the construction of the will consented that it disposed of the fee and not a life estate.

In Drye v. Cunningham, Medley & Co., 24 Ky. L. R., 2500, the testator by his will gave certain property to his wife for life with remainder to his daughters, one of whom was Susan Tucker, and provided that the share of Susan Tucker should be placed in the hands of a trustee to manage and control the same and pay over to her annually the interest, and the court held that there being nothing in the will to indicate a purpose on the part of the testator to limit the estate of Mrs. Tucker in the property placed in the hands of the trustee to a life estate, and that she took the fee, saying: "The fund was placed in the hands of a trustee for its protection from her improvidence or that of her husband, but nothing further was provided. * * * The creation of the trust did not change the character of the estate devised to Mrs. Tucker. It was her property, held in trust for her." A similar ruling was in effect made in Reuling v. Reuling, 137 Ky., 637.

In the case of McCallister v. Bethel, 97 Ky., 1, the question arose as to the proper construction of a clause in the will of Ben Talbot in which he devised certain property to John McCallister in trust for Joseph McCallister with the provision that if Joseph McCallister left surviving him no children it should go to any persons to whom Joseph might will it. Joseph died intestate and without children, and the court, in holding that he took the fee in the property devised, said:

"There is no expression or word used which requires the trustee to give Joseph the rents during his life, so as to indicate an intention upon the part of the testator that he was to have only a life estate in the land. It is perfectly manifest from the will that the testator knew how to create a life estate in a devisee. * * * Had he intended that Joseph should only take a life estate in the farm, he would have said so, as he did in the case of his daughter. * * * Having given Joseph the fee, it was wholly unnecessary for the testator to emphasize the fact by trying to confer upon him the right to will the farm to whomsoever he pleased. The right to so dispose of the farm was incident to the estate which the testator gave him, and no further words

were necessary to be employed to enable him to do so, unless he had bodily heirs."

In Cropper v. Bowles, 150 Ky., 393, the property in question was given to Mrs. Bowles "to be her sole and separate estate, free from the debts and control of her husband, or any husband she may ever have, with the right to dispose of same by last will and testament or writing in the nature thereof, but without power to mortgage or otherwise to encumber or to sell or convey the same during her life." The court held that Mrs. Bowles took the fee, and that the restraint upon the alienation of the estate was void; but it will be observed that here the grantor, without limitation, except in respect to the restraint on alienation referred to, conveyed the estate in fee, nowhere indicating a purpose that it should be for life.

Turning now to the other line of cases relied on in support of the proposition that under the will Ella Bull Snively took only a life estate in this fund, it appears that in McCullough v. Anderson, 90 Ky., 126, the testator devised his property to his wife in a clause reading, "To my most precious and well beloved wife I give, during her life, all my estate, real and personal, whether in possession or in action, with full and ample authority to dispose of the whole of it as she pleases. At her death, if she should not have previously made a testamentary distribution of all remaining undisposed of by her, I desire that such remainder shall be distributed as herein directed." On the death of the wife, who had not made any disposition of a large part of the estate, a controversy came up as to whether she took the fee or a life estate, and the court held that the wife took only a life estate with the power of disposition, which she had failed to exercise, laying down the general rule, that has since been consistently followed, that "if the estate is given or devised generally or indefinitely with power of disposition, it passes a fee, but when the devisor or grantor owning the fee gives to the first taker an estate for life, with the power to dispose of the fee, no greater estate is vested in the first taker than that carved out of the fee and vested in him by the devisor or grantor He is given a life estate in express terms, and the failure to exercise the power gives to the remainderman the fee, because no disposition having been made of it by the life tenant, he takes under the will or conveyance.

\* \* \* Now, if the testator had intended to vest the wife with the fee, or to give her the absolute estate, without any limitation, it could have been readily expressed, and there would have been no necessity for carving a life estate out of the fee, and then conferring upon the life tenant the power to pass the fee by deed or will, if she desired to do so. The provision of the will giving the wife this power shows that upon its exercise alone could the wife pass the fee, so as to defeat the objects of the testator's bounty, designated to take the remainder." Payne v. Johnson, 95 Ky., 175; McCallister v. Bethel, 97 Ky., 1.

Running through the many cases construing provisions in wills like the one here in question there will be found the distinction that when the estate is devised for life, either expressly or by necessary inference gathered from the intention of the testator as expressed in the will, the power of disposition in the devisee will not convert the estate into a fee, but, if the devise does not specifically or by necessary inference create a life estate, the power of disposition invests the devisee with the fee, and these rules apply with equal force whether the estate is given immediately to the devisee or placed in the custody of a trustee for his benefit.

In this will we think the testatrix manifested very clearly her purpose to limit the estate to a life estate, or else she would not have used the words "during her life." If the testatrix had not intended to limit the estate to a life estate with the power of disposition, it is difficult to understand why these words were inserted in the will. That they were not used by inadvertence or mistake, or through ignorance of their meaning, is shown by the care with which the entire will was prepared and the clearness with which the testatrix disposed of her estate and the appropriateness of the words used in giving the fee and lesser estate to different devisees. The will provides in express terms that the trustee "shall hold the estate in trust for the use and benefit of Ella Bull Snively during her life," and if the estate should be taken out of the hands of the trustee and turned over to the devisee, this would be doing, as it seems to us, what the testatrix expressly directed should not be done.

This conclusion, which results in holding that Ella Bull Snively did not take the fee but only a life estate

with power of disposition, makes it unnecessary to consider the other question raised, that the will created what is known as a dry or passive trust.

Wherefore, the judgment is reversed, with directions to enter a judgment in conformity with this opinion.