## NOBLE E. PIERCE, TRUSTEE, vs. THEODORE C. ROOT ET AL.

*Third Judicial District, New Haven, June Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK AND WHEELER, JS.

By virtue of General Statutes, § 292, relating to devises, and the common law relating to bequests, all the property of a testator, real and personal, including that acquired by him after the execution of his will, passes under it, unless a contrary intent be affirmatively disclosed by the instrument itself. It is not enough that the testator had no definite intent except such as the law supplies; he must have had an affirmative, positive intent to the contrary. The intent need not be expressed in terms, but it must be derivable from the will itself.

Therefore a will which in terms conveyed all the estate of a testatrix, whose family circumstances were such as must have suggested to her the possibility of her property being increased by inheritance from relatives, and the terms of which were appropriate for the disposition of a large estate, will not be limited in its operation to the property which she owned when the will was executed merely because, by a series of deaths caused by an accident, her estate was increased from $10,000 to $112,000, and she herself was fatally injured and remained unconscious from the time of the accident until her death.

The will gave to the aunt of the testatrix a life use of the estate, provided that after the aunt's death the income should "be allowed to accumulate for the purpose of giving to each of the children of my brothers a collegiate education," and that the income, and if needed the principal, should be used for such education, and further provided that "when the last of said children shall have completed their collegiate course" one half of the estate was to go to one brother for life with remainder over, and the other half to the other brother in fee with suggestions as to his ultimate disposal of the same. When it was executed the testatrix had two brothers, one unmarried, the other married and having one child. The aunt and the unmarried brother died before the testatrix. The married brother and his child survived her. Soon after the child died in infancy, leaving him childless. *Held:*—

1. That the estate should not be held for accumulation during the life of the surviving brother, in order to provide for the education of possible future-born children.

*Transferred from first judicial district.

2. That the beneficial interest in the education trust vested at the death of the testatrix in the living child; and that on its death the trust ceased, and the estate became distributable under the further provisions of the will.

Argued June 11th—decided July 26th, 1912.

Suit to determine the construction of the will of Mary P. Root, late of Bristol, deceased, brought to and reserved by the Superior Court in Hartford County (*Curtis, J.*), upon the facts alleged in the complaint and found true by the court, for the advice of this court.

The testatrix, a spinster, died August 27th, 1907, in consequence of an accident resulting from the collision of an automobile in which she was riding and a railroad train. She survived in an unconscious condition four days. In the same accident her mother, Catherine R. Root, her aunt Candace E. Roberts, and her brother, Charles J. Root, were instantly killed. Before this event, the testatrix was possessed of an estate of approximately $10,000, and her only apparent prospect of its increase was such as might arise from the death of some relative. As a result of the mother's death, there came to her estate a little over $7,000, the avails of the sale of realty. Charles left a will, by which he gave to the testatrix one half of his estate, consisting of both realty and personalty, of the value of about $95,000. As the result of these two accretions, Miss Root's estate amounted to about $110,000.

She left a will, duly probated, of the following tenor: "I give, devise, and bequeath all my property, real and personal, in possession or in remainder, to my brother, Charles J. Root, in trust to safely keep and invest the same for the uses and purposes following:

"1. During the lifetime of my aunt, Candace E. Roberts, to pay to her the income thereof, or so much of said income as in his judgment will insure her comfortable support.

"2. After her death, the income is to be allowed to accumulate for the purpose of giving to each of the children of my brothers a collegiate education. Whenever the oldest of said children shall be prepared to enter upon a collegiate course, the trustee shall appropriate to and use for his or her education so much of the accumulated and current income as in his best judgment will insure to said eldest child equality in the benefit of said fund with the younger child or children, the determination of the proportion and the expending thereof being wholly intrusted to the discretion of the trustee, according to all the circumstances then existing.

"3. When the last of said children shall have completed their collegiate course, one-half of my estate shall go to my brother, Theodore C. Root, for life, the income thereof to be paid over to him as the same may accrue; and at his death leaving a child or children, said one-half of my estate shall go, in equal shares, to said.child or children, to be to them and their heirs forever; if my said brother Theodore shall die, leaving no children living at the time of his death, the one-half bequeathed to him shall go according to the provisions of the following paragraph.

"4. The remaining half of my estate, together with the portion mentioned in the last clause of the preceding paragraph, I give, devise, and bequeath to my said brother Charles, and to his heirs forever in fee, if either he, or his child or children, are then living; but it is my desire, which I hereby state for his guidance (not making it an imperative limitation of his estate) that he should, in case of his own death without children, provide for the passing of the amount received by him from my estate to the Town of Bristol, to hold the same in trust for the establishment, maintenance, and support of a free, public library, using principal and interest for

that purpose; and if my said brother Charles shall have died leaving no children before the completion of the trusts created in the second paragraph, or before the expiration of my brother Theodore's life estate, then I give, devise, and bequeath the one-half interest otherwise going to said Charles from the residue, and also the one-half arising from the death of my brother Theodore without issue, to the Town of Bristol, for the uses and trusts above limited.

"5. I hereby nominate and appoint my said brother Charles as executor hereof."

Charles left no children or legal representative of children. The testatrix had only one other brother, Theodore, who still survives at the age of fifty-seven, childless, and in feeble health. He had one child, a daughter, who died after the testatrix, leaving no child or descendants.

The defendant city of Bristol has, by legislative action, succeeded to the rights of the town. The plaintiff, Pierce, is the duly appointed and qualified trustee in succession to Charles J. Root, named in the will. The defendant Newell is the administrator c. t. a. of the testatrix's estate. He settled the estate, and turned over to the trustee $112,737.28. Since the trustee's receipt of this fund, there has come into his hands income which he still holds.

The plaintiff seeks advice in answer to the following questions: " (1) Should the plaintiff allow the income of said estate to accumulate for the purpose of giving a collegiate education to children that may possibly hereafter be born to said Theodore C. Root? (2) Should the plaintiff pay over to said Theodore C. Root one-half of the income of said estate as the same may accrue? (3) What disposition should the plaintiff make of the remaining one-half of said income? (4) What disposition should the plaintiff make of the one-half of

said estate given to Charles J. Root in the fourth item of said will? (5) Is the whole or any part of said estate intestate? "

*Kendall M. Pierce,* for the plaintiff (trustee).

*Epaphroditus Peck,* for the defendant Theodore C. Root.

*Josiah H. Peck,* for the defendant Edward E. Newell, administrator c. t. a. of the estate of Mary P. Root (testatrix).

*William J. Malone,* for the defendant the city of Bristol.

PRENTICE, J. The administrator c. t. a. of Miss Root's estate claims that her will is not effective to dispose of that considerable portion of her estate which came to her a few days before her death by the decease of her mother and her brother Charles. By force of our statute (General Statutes, § 292) relating to devises of realty, and the common law governing bequests of personalty, the will must be construed to operate upon and convey all the estate, whether real or personal, of which the testatrix died possessed, unless a contrary intention is affirmatively disclosed by that instrument. *Canfield* v. *Bostwick,* 21 Conn. 550, 554; *Gold* v. *Judson,* 21 Conn. 616, 622. This intention doubtless need not be expressed in terms, but it must be derivable from the will itself.

We examine Miss Root's will in vain to discover any sufficient indication of an intention on her part to limit the operation of the general and comprehensive language she used in describing the subject-matter of her testamentary provisions. It may be that when she executed the instrument she did not have in her mind the by no

means remote possibility that her then modest estate would, before her decease, assume enlarged and even greatly enlarged proportions; and that she did not dictate its terms with that contingency in contemplation. It is difficult to imagine, however, that such was the fact. As to her mother, she must have known and realized their different chances of life, and doubtless was aware that the mother possessed estate. She knew that her brother Charles was a bachelor; that he might well predecease her; that she was one of his two heirs at law, and a natural object of a large share of his bounty, should he leave a will; and, presumably, that he was the man of means he proved to be. It is hard to believe that she was altogether blind to the contingencies in this regard which the future might have in store for her when she made her will. But, if she was, that fact would not be sufficient to create the condition of an affirmative, positive intent which must exist. It is not enough to vary the presumptive effect which attaches to the language the testatrix used, that she had no intent, except such as the law supplies. She must have had a contrary intent.

Of the existence of such an intent, the will fails to furnish satisfactory evidence. In fact, the most suggestive feature upon the subject it contains argues strongly against such a proposition. Her provision, contained in the fourth paragraph, looking to "the establishment, maintenance, and support of a free, public library" for a place of the size of Bristol, "using principal and interest for that purpose," forcibly indicates that she had it in contemplation that she might die leaving a much larger estate than was hers at the moment, and as forcibly indicates her purpose that whatever she might die possessed of should come under the operation of her will according to its natural import.

The trustee of the trust fund created by the will con-

tends, in the interest of possible future-born children
to the now childless Theodore, fifty-seven years of age
and in feeble health, that the will requires that the in-
come of the fund should be held by the trustee and
allowed to accumulate, for the purpose of providing
collegiate education to such children. This means
that the income must be withheld from Theodore ab-
solutely and forever, since the possibility of children
being born to him cannot, in legal contemplation, be
at an end until his decease, and the period of gestation
thereafter. *White* v. *Allen*, 76 Conn. 185, 189, 56 Atl.
519. It means that from now on until that time is
reached no one can have any enjoyment of the income,
or of any portion of the principal, save as Theodore
may have a child which shall arrive at the college
education stage; and that, barring the happening of
such an event, the entire fund shall be held and its
income accumulated.

Such a result is by no means consonant with the pro-
visions of paragraphs three and four, and with the
testatrix's intent as shown therein. These paragraphs
clearly disclose her intention that her brothers, not-
withstanding the provision for the college education
of their children, should, if they survived for the req-
uisite period, each enter into the enjoyment of a one-
half share of her estate, the one as owner, and the other
as the recipient of income. The claim under considera-
tion renders, and under all possible conditions would
render, such a result impossible. The language of
the will is not of such inflexible meaning as to render
this defeat of the testatrix's manifest purpose unavoid-
able. There are three several points of time from which,
consistently with the language of the will, it might be
said that the identity of the children who might benefit
by the educational provision of the trust was to be
determined. It might be, as claimed, that point of

Pierce v. Root.

time when all possibility of children had passed; it might be the time of the death of the testatrix, thus limiting the beneficiaries of the educational trust to children born or *en ventre sa mere;* or it might be the time of the death of the life tenant, Candace E. Roberts, so that all children then born or conceived should be admitted.

It is clear that the first alternative cannot be adopted without defeating the testatrix's manifest purpose and nullifying portions of her will. It matters not whether the one or the other of the remaining two be accepted as best suiting Miss Root's expressed purpose, the result will be the same, to wit, that the trust for the educational purposes defined in the will has been fully executed; and that the fund is in the hands of the trustee to satisfy the remaining provisions of the trust. We are of the opinion that due regard for the testatrix's intent, as disclosed by her will, requires, in the application of familiar rules of interpretation, that one of the two latter constructions should be given to it, with the result stated. *Wolfe* v. *Hatheway*, 81 Conn. 181, 185, 70 Atl. 645; *White* v. *White*, 52 Conn. 518, 520; *Healy* v. *Healy*, 70 Conn. 467, 471, 39 Atl. 793.

The Superior Court is advised to answer the first and fifth of the questions propounded in the amended complaint in the negative, and the second in the affirmative, and further to advise that the city of Bristol is entitled to receive from the trustee one half of the trust estate now in his hands, including any accumulated income, the same to be used and appropriated by it, when received, to the uses and purposes, and under the conditions, defined in paragraph four of the will.

No costs in this court will be taxed in favor of either of the parties.

In this opinion the other judges concurred.