THE COLONIAL TRUST COMPANY, TRUSTEE, *vs.* LENA M. BROWN, EXECUTRIX, ET ALS.

Third Judicial District, New Haven, June Term, 1926

WHEELER, C. J., CURTIS, MALTBIE, HAINES AND HINMAN, Js.

Where a testamentary trust was created for certain annuitants with remainder to the "heirs of the blood of my father," those who came within the latter designation at the death of the testator then took a vested interest, although their enjoyment was postponed until the termination of the trust.

The fact that two of the remaindermen were also annuitants did not impliedly exclude them from participation in the remainder

Colonial Trust Co. *v.* Brown.

interest, since their annuities represented only a part of those created and since, from the terms of the trust, which provided for the continuance of the annuities to unborn children, the testator must have foreseen that the enjoyment of the remainder would probably be postponed beyond the death of either of them.

A trust for the payment of an annuity to A for life, then to B for life, and then to the surviving children of B for their lives, is not obnoxious to the rule against perpetuities.

The corpus of the trust fund consisted largely of real estate which in the years following the death of the testator in 1916 produced a steadily increasing income, now greatly in excess of the amount required for the annuities; and the remaindermen contended that, despite a restriction in the will against the sale of the more valuable realty during the continuance of the trust, it was the primary intent of the testator to assure the payment of the annuities and that when this was accomplished by the accumulation of personalty, the realty should be freed of the trust. *Held* that this contention was not supported by the will which, in its many provisions concerning the use and management of the realty and, notably, in its direction that excess income be devoted to the discharge of existing incumbrances and to the making of improvements, disclosed that it was the testator's intent to secure the payment of the annuities in a particular way, i.e., by preserving the property intact; and that these provisions were similarly opposed to the further claim that it was the testator's intent that the excess income should be paid as it accrued to the residuary devisees; but that these devisees were entitled to such income because, not having been specifically disposed of, the right to its enjoyment vested in them at the testator's death as a part of the residue.

In this State, a testator may postpone the transfer of the principal of a devise, with a direction that meanwhile the income only be paid to the devisee, even though no one except the latter has an interest in the property.

Where a devise of an estate with fixed legal incidents is accompanied by an attempt to curtail the devisee in their enjoyment, the restriction is void, as where a devise of an estate in fee is followed by a provision against alienation; but this rule has no application to real estate devised in trust.

Although the rule against perpetuities and that against restraints upon alienation are entirely distinct—the one being concerned with the vesting of estates in right and the other with limitations upon their enjoyment—nevertheless the same period which determines a perpetuity, a life or lives in being and twenty-one years, has been adopted by analogy as the limit beyond which a restraint upon alienation cannot be validly extended; hence, a provision in a trust forbidding the sale of real estate com-

Colonial Trust Co. *v.* Brown.

prising a part of it for a period extending beyond that limit is void. Whether under the peculiar circumstances of a particular case a trust imposing a restraint for a shorter period might not be invalid as opposed to public policy, *quære.*

A testator's "wish" or "request" that a certain employee be retained by his trustee in the management of his estate is merely precatory.

Where, as in the present case, the general or dominant intent of the testator in establishing a trust was to make certain in all events the payment of annuities to the beneficiaries, such gifts are not invalidated or otherwise affected by the fact that a prohibition against the sale of the real estate comprising a part of the trust is void because of its possible continuance for a period longer than a life or lives in being and twenty-one years; and should the trustee sell the realty, it may, in the absence of an intent on the part of the testator to maintain a fund in excess of that required for the annuities, retain merely a sum amply sufficient to produce the necessary income, and pay over the balance of the principal, together with any excess of income accumulated from time to time, to the beneficiaries under the residuary clause.

As a general rule, a testator has the right to impose such terms as he pleases upon a beneficiary as conditions precedent to the vesting of an estate in him, or to the enjoyment of a trust estate by him as beneficiary, provided they are not uncertain, unlawful, or opposed to public policy; and the same rule applies to conditions imposed by him upon the management of property placed in trust.

The testator in the present case forbade his trustee to lease the real estate, a large part of which was situated in the center of Waterbury, for more than one year or to erect new buildings exceeding three stories in height. *Held* that under all the circumstances of the case, including the possible duration of the trust for seventy or more years, the unwisdom of the provisions from the standpoint of the profitable management of the estate, and, more especially, their harmful effect upon the natural and proper growth and development of the city, these restrictions were invalid as opposed to public policy.

The power conferred upon a trustee by will to sell, lease and convey real estate does not carry with it the power to mortgage, which, in such a case, must be obtained by application to the Court of Probate.

If a will gives a trustee power to sell real estate within five years, the expiration of that period terminates his testamentary authority to do so, but does not deprive the Court of Probate of its jurisdiction under § 4902 of the General Statutes to order a sale upon proper application.

A provision in a will forbidding a trustee to invest "in any railroad

Colonial Trust Co. *v.* Brown.

bonds or in any corporation not located in the City of Water-
bury," does not prohibit investment in State and municipal
bonds.

A direction that a trustee "shall maintain an office" in a building
which is a part of the estate is obligatory so long as that property
remains in the trust.

Argued June 2d—decided December 16th, 1926.

SUIT to determine the construction of the will of
Robert K. Brown, late of Waterbury, deceased, brought
to the Superior Court in New Haven County and re-
served by the court, *Dickenson, J.,* upon an agreed
statement of facts, for the advice of this court.

Robert K. Brown died in 1916, leaving a will made
five months before in which, after making a few small
bequests, he gave all his property to the plaintiff in
trust, directing it to pay certain annuities, and pro-
viding for the distribution of the residue among the
heirs of the blood of his father *per stirpes.* The por-
tions of the will material in answering the questions
propounded are printed in the footnote.

"Fourth. I give and bequeath to The Colonial Trust Company,
a body politic and corporate, located and doing business in said
Waterbury, all the rest, residue and remainder of my estate, real
and personal, in trust, for the following uses and purposes: To take
and have the entire use, management and control of the same, with
full power to sell, except as limited and provided in the next clause
of this my will, to lease and convey, invest and re-invest the funds of
my said estate as in the discretion of said trustees shall seem for the
best interests of said estate, for the purpose of raising all such sums
of money as shall be required for the payment of the trusts, annuities,
charges and legacies hereby created, given and bequeathed.

"The said Colonial Trust Company shall maintain an office on the
second floor of the building on my property, on Exchange Place and
East Main Street, for the convenience of the occupants and to transact
the business pertaining to my estate, to collect and receive all the
rents and other income from my estate, and transact other business
necessary to the care and keeping up of said property.

"It is my wish that Blanche M. Pierce, having had twenty years
and more experience and knowledge of my business, shall be re-
tained during her lifetime as the principal and head of said office,
without bonds. Said trustee shall give her an assistant, who in case

His estate consisted principally of the two pieces of property referred to in the ninth paragraph of his will as the Exchange Place property and the Homestead.

of her sickness or absence, with a few years' experience, may conduct said office during her absence.

"It is my request that Pedro Delgazo be retained as a janitor, as he is very familiar with all my property and has always been employed by me since he came to this country.

"Daily deposits shall be made with The Colonial Trust Company of all money received.

"No leases shall be given for a period exceeding one year on any of my property, and no promise shall be given for the future beyond that time. The good behavior of the tenant shall alone warrant his continuance.

"Fifth. I give and bequeath to my half-brother, Frederick J. Brown, of said Waterbury, an annuity of $3,600, payable in monthly payments of $300 each on the tenth day of each and every month for the term of his natural life; and upon the decease of my said half-brother, Frederick J. Brown, I will and direct that said annuity of $3,600 be paid in monthly payments of $300 each, to his children, Leonie M. Brown Williams and Hayden W. Brown, both of said Waterbury, in equal proportions, share and share alike, for and during their natural lives; and in the event of the decease of the said Leonie M. Brown Williams during the lifetime of her children, I will and direct that one-half of said annuity of $3,600 be paid, in monthly payments each to her surviving children, in equal proportions, share and share alike, for and during the term of their natural lives; and in the event of the decease of either of them, to the survivor or survivors, for and during the term of their natural lives. And in the event of the decease of the said Hayden W. Brown during the lifetime of his children, one-half of said annuity of $3,600 to be paid in monthly payments each to his surviving children, in equal proportions, share and share alike, for and during the term of their natural lives; and in the event of the decease of either of them, to the survivor or survivors, for and during the term of their natural lives.

"Sixth. Should Buckingham P. Merriman of said Waterbury, survive my said half-brother, Frederick J. Brown, I give and bequeath to him an annuity of $2,400, payable in monthly payments of $200 each, for and during his natural life; and in the event of the decease of the said Buckingham P. Merriman leaving children, I will and direct that said annuity of $2,400 be paid in monthly payments each to his surviving children, in equal proportions, share and share alike, for and during the term of their natural lives; and in the event of the decease of either of them, to the survivor or survivors, for and during the term of their natural lives.

The Exchange Place property was acquired by testator's father in 1848, and at his death in 1881, by the testator. It is located in the heart of the financial

"Seventh. I give and bequeath to the said Harriet Wheeler Goss, an annuity of $2,400, payable in monthly payments of $200 each, for and during the term of her natural life; and upon the decease of said Harriet Wheeler Goss, I will and direct that an annuity of $3,600 be paid in monthly payments each to her three children, Edward Wheeler Goss, William Middlebrook Goss and Eliot Porter Goss, in equal proportions, share and share alike, for and during their natural lives; and in the event of the decease of either of them, said annuity of $3,600 to be paid to the survivor or survivors, for and during the term of their natural lives.

"Eighth. Should the rents and profits of my real and personal estate be insufficient to pay in full the annuities given in this will, I will and direct that said income, rents and profits be divided pro rata among said annuitants in proportion to the respective sums devised to them under this will.

"Ninth. The said trustee is hereby forbidden to sell or dispose of two parcels of land situated in said Waterbury, one my homestead situated at the corner of West Main and Meadow Streets with the adjoining property, intending hereby to include all the property facing on West Main and Meadow Streets; and one situated at the corner of East Main and South Main Streets, known as the Exchange Place property, intending hereby to include all the property facing on East Main and South Main Streets and Exchange Place; and said trustee is hereby authorized and empowered to sell all of my real estate, wheresoever situated, either by public auction or private sale, as it may deem for the best interest of my estate, except as herein set forth, within five years.

"Tenth. The said Colonial Trust Company is given full power and discretion to invest the income from said estate, and the avails arising from the sales of said real estate belonging to said estate, except that said trustee is forbidden to invest in any railroad bonds, or in any corporation not located in the city of Waterbury, State of Connecticut.

"Eleventh. It is my will and I direct said trustee to pay off the incumbrances on my Exchange Place property and West Main and Meadow Streets property so fast as it shall have any unexpended funds in its hands, or to use the funds of said estate as it may deem necessary and proper for the improvement and construction of said Exchange Place and West Main and Meadow Street property; provided, however, that any new buildings placed upon said land shall not exceed three stories in height. The said trustee having full power to use its discretion as to whether it will first

Colonial Trust Co. *v.* Brown.

and retail business district of Waterbury, is as valuable as any land in the city, and most favorably adapted for buildings containing stores and offices. There is, and for a long time has been, upon it a group of several old buildings. They are costly to maintain, expenditures for this purpose during the last seven years absorbing more than fifty per cent. of the gross rentals. Their condition, arrangement and appearance are such that the lower floors are not desirable for use for retail stores and the upper floors are ill-adapted to commercial or business purposes. So long as the height of buildings upon the property is restricted to three stories, it cannot be improved so as to get the best income return and the restriction is likely to have a more serious effect in the future. Even if the properties were improved, the best income return cannot be secured, so long as leases can be given only for one year, and this restriction, too, is likely to have a more serious effect in the future; it in fact diminishes the ground floor rentals by at least twenty per cent., and about seventy per cent. of the gross income from the property is derived from these rentals. Tenants of the most desirable class cannot be secured for the property, and could not be, even if the properties were improved, unless leases for more than one year could be given. This reacts upon rental values and the character of the business done in the neighborhood and retards the normal development of

---

remove the said incumbrances on said property, or build upon and improve the same. In the event of damage by fire or other cause to buildings more than three stories high, said buildings shall not be repaired above the third story, but all stories above the third shall be condemned and removed, leaving the buildings three stories in height.

"Twelfth. All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to the heirs of the blood of my father, William Brown, to be divided among them *per stirpes*, to them and their heirs forever."

the property in use and value. At the testator's death the property was assessed for taxation at $418,300, and in 1924, at $746,000, its fair market value being approximately $1,000,000. There is a mortgage upon it which amounted at his death to $181,500, but which has since been reduced by a payment of $6,000.

The Homestead property was in part acquired by the testator from his father in 1876 and in part purchased by him in 1889. The land is occupied by several dwelling-houses, which have been substantially unchanged since the testator acquired them, except that the use of one has had to be abandoned, and by a brick barn, which since the testator's death has been converted into an automobile service station and salesroom. The property cannot be improved, so long as the height of buildings upon it is restricted to three stories, or, if improved, cannot be rented so long as leases upon it are restricted to one year, so as to secure the best income return from it, and the effect of these restrictions is likely to be more serious in the future. This property was assessed for taxation at the testator's death in 1914 at $50,000, and in 1924 at $80,400, its market value now being approximately $100,000.

The effect which would be caused by the restrictions as to height of buildings and length of leases to be given, inserted in the will, was apparent when the testator executed it and thereafter until his death was known to him. The net income received from the two properties for the three years before the date of the will averaged $20,000. Since then, although the annuities provided in the will have been paid, and $6,000 has been applied on the mortgage, there has been an accumulation of excess income to such an extent that, with certain other funds added, the trustee, on December 31st, 1925, held personal property to the amount of $288,469.63.

At the time of the testator's death there were living of the descendants of his father one grandson of a sister of the testator of the full blood, the defendant Buckingham P. Merriman, who is unmarried; a half-brother of the testator, Frederick J. Brown; and several children and grandchildren of the latter. The testator's relations with Merriman and Brown and the latter's family were cordial and pleasant. Frederick J. Brown has since deceased, leaving a last will in which he named his wife, the defendant Lena M. Brown, as executrix, and made her sole devisee and legatee of his property. One grandchild of Frederick J. Brown has been born since the testator's death.

The questions we are asked to answer are as follows: "(1) Who are the 'heirs of the blood of my father William Brown,' as that phrase is used in article twelfth of the will and as of what date are they to be determined? Did the persons thus described take a vested interest under the will upon the death of the testator and, if so, what interest, and to what extent. (2) Are the 'heirs of the blood of my father William Brown' now entitled to any part of the corpus of the trust estate? (3) Are the 'heirs of the blood of my father William Brown' now entitled to the balance of the net income of the trust estate, after the payment of the annuities, or to any part thereof? (4) Is the trustee required to accumulate income not needed for payment of annuities and, if so, to what extent? (5) What are the duties and powers of The Colonial Trust Company, as trustee, with respect to the net income received by it? (6) Has the trustee power to mortgage the 'Exchange Place' and 'Homestead' properties for the purpose of erecting new buildings thereon? (7) What interest, if any, did Frederick J. Brown have at the time of his death under the will of Robert K. Brown, and in or to the trust estate?

(8) Is the restriction with reference to the 'Exchange Place' and West Main and Meadow Streets properties contained in article eleventh, namely—'Provided, however, that any new buildings placed upon said land shall not exceed three stories in height' binding upon the trustee and, if so, what is meant by a building which shall not exceed 'three stories in height'? (9) Are the provisions of article ninth intended to forbid the trustee to sell or dispose of the West Main and Meadow Streets property, and the 'Exchange Place' property, and if so, are they absolutely binding upon the trustee, and what is the effect of the limitation upon the power of the trustee to sell the other real estate of the testator 'within five years'? May such of the other real estate as has not been sold be now sold by the trustee upon application and decree of the proper court? (10) Under the provisions of article tenth whereby the trustee 'is forbidden to invest in any railroad bonds, or in any corporation not located in the city of Waterbury, State of Connecticut,' may the trustee invest without restriction in state and municipal bonds? (11) Does paragraph 4 of the will require that the trustee shall forever keep an office open, and if so, is it valid and binding on the trustee? (12) Are the words used in paragraph 4, with reference to the employment of Blanche M. Pierce and Pedro Delgazo precatory or obligatory, and if the latter, what duty will the trustee owe to them when the trust terminates? (13) Is the provision restricting the leasing of the property to one year binding upon the trustee? (14) Does the clause in paragraph 4 'except as limited by and provided in the next clause of this my will,' in any way restrict the power of the trustee to sell, when it appears that no such limitation is made in either the next clause or the next paragraph?"

*Terrence F. Carmody* and *Walter E. Monagan,* for the plaintiff.

*Leonard M. Daggett,* for the defendants Lena M. Brown, individually and as executrix, Leonie M. Brown Williams and Hayden W. Brown.

*Francis T. Reeves,* for the defendants Blanche M. Pierce and Pedro Delgazo.

*Carroll C. Hincks,* for the defendant Buckingham P. Merriman.

MALTBIE, J.   There is nothing in the terms of the will to suggest that the testator intended that the ascertainment of the "heirs of the blood of my father," to whom, in the twelfth article of the will, he gave the residue of the estate, should be postponed until the termination of the trust.   That being so, the remainder interest in the trust estate vested at his death in those who then came within that description, and, though their enjoyment would have to be postponed, they had an estate which they might alienate or devise.   *Allen* v. *Almy,* 87 Conn. 517, 523, 89 Atl. 205; *Close* v. *Benham,* 97 Conn. 102, 104, 115 Atl. 626; *Stamford Trust Co.* v. *Lockwood,* 98 Conn. 337, 348, 119 Atl. 218.   The "heirs of the blood of my father" were then Buckingham P. Merriman and Frederick J. Brown.   Nor are they to be regarded as impliedly excluded, under the doctrine of *Gross* v. *Hartford-Connecticut Trust Co.,* 100 Conn. 332, 123 Atl. 907, because the will also provides annuities for them; for these annuities represent only a part of the life interests created, and the testator could hardly have expected that the remainder interests would take effect in enjoyment upon the death of either of them. *Newell* v. *Beecher,* 98 Conn. 263, 272, 119 Atl. 223; *Thomas* v. *Castle,* 76 Conn. 447, 452, 56 Atl. 854.   It is not improbable that the testator intended the re-

mainder interests to vest in right in one or more of the annuitants, if they were in fact the "heirs of the blood of my father." The remainder interest is now vested in Merriman and in Lena M. Brown, the personal representative and sole legatee and devisee of Frederick J. Brown.

The annuities provided in the fifth, sixth and seventh articles for the beneficiaries named therein vested immediately upon the testator's death. Each of the "surviving children" for whom annuities are provided in the fifth and sixth articles must obviously be in being at the death of his parent, and the gift to him must vest immediately upon that death. All the annuities must vest, then, within a life or lives in being and twenty-one years, and none of them are, therefore, obnoxious to the rule against perpetuities. Their significance in our present inquiry lies in the fact that they fix as the duration of the trust not only the period of the lives of the annuitants in being at his death, but also the further period of the lives of the children who may be born to the named annuitants after his death, that is, a period of possibly seventy or eighty years, or even longer.

It is vigorously argued that the primary and chief intent of the testator in his provisions for the administration of the trust was to assure the payment of the annuities he provided, and that, when that object can be realized by reason of an accumulation of personal property in the hands of the trustee sufficient to produce the necessary income, the real estate should be freed of the trust. No doubt a chief end the testator had in mind was to make sure that the annuities would be paid; but one cannot read the will without realizing also that he intended to accomplish that end by providing for the retention of the real estate in the trust as the primary source of the income with which to pay

them.   Its provisions are not set forth in a very clear
way, but the intent is plain.   In the fourth article he
places in the trust the real estate as well as the per-
sonal property, and he provides that the trustee shall
maintain an office in the Exchange Place property and
expresses the wish that Blanche M. Pierce be retained
as its head "during her lifetime"; in the ninth article
he sets apart the Exchange Place property and the
Homestead to be retained by the trustee, and then
provides for the sale of the other real estate he owns;
in the tenth article, he gives the trustee power to in-
vest "the income from said estate and the avails aris-
ing from the sales of real estate," with a limitation
as to the character of the investments which may be
made; and in the eleventh article, he directs the trustee
to pay off incumbrances upon the Exchange Place
property and the Homestead "so fast as it shall have
any unexpended funds in its hands, or to use the funds
of said estate as it may deem necessary and proper for
the improvement and construction" of the properties,
giving it "full power to use its discretion whether it
will first remove the said encumbrances on said prop-
erty or build upon or improve the same."   Clearly the
dominating thought here was the retention and im-
provement of these two properties and to that end he
devotes the other funds of the estate, the provisions
of the tenth article, when considered in connection with
the broad powers given the trustee to invest and rein-
vest in the fourth article, being inserted merely to
make effectual the limitations therein stated upon the
character of such investments as the trustee may have
occasion to make.   For the three years before his
death, the net income of the property was only
$20,000 a year, and this, in connection with the provi-
sion in the eighth article for the proportionate abate-
ment of the annuities should the income of the trust

be insufficient to pay them all in full, indicates that the testator had no expectation of such an excess of income as could not reasonably be used in one of the ways he specifies. To continue the personal property in the trust and to release the real estate from its operation is not merely to put into the mind of the testator an intent of which the will gives no indication, but it is to run counter to the intent which it fairly expresses.

The remaindermen make an alternative claim, that any income from the fund not needed to pay the annuities shall from time to time be distributed to them or to those who shall come to stand in their shoes by assignment or descent. This claim, however, overlooks the provisions the testator has himself made for the use of income not needed for the annuities, which we have just pointed out. The first duty of the trustee is to pay the annuities, but close after it follows the duty to use the other funds in its possession to carry out the provisions of the eleventh article. This requires of the trustee that, as long as it holds the properties in question, whenever an excess of personal property accumulates in its hands beyond such a contingent fund as good business management requires it to hold, it shall determine whether to apply it to discharge the mortgage upon the Exchange Place property or to use it for immediate improvements or let it accumulate to a reasonable extent against some contemplated larger plan; but it does not permit the accumulation of a large excess in the absence of a reasonable anticipation of its use in the improvement of the properties. In determining whether to make improvements to the properties, the trustee must, of course, be governed by the requirements of ordinarily prudent business management and should not go beyond them; *McClure* v. *Middletown Trust Co.,* 95 Conn. 148, 153, 110 Atl. 238;

to the extent to which the funds of the estate cannot be applied to such a use conformably to that standard, the income must go to discharge any remaining incumbrances upon the Exchange Place property. Only if these incumbrances should ultimately be discharged, and no use be open for the funds of the estate in the reasonable improvement of the properties, would there be an excess of income beyond the amount needed to carry out the express will of the testator.

In determining the disposition of such an excess of income, should it materialize, we must first search the will to see if we can find there disclosed any intent of the testator as to it. *Lyman* v. *Parsons,* 26 Conn. 493, 519; *Andrews* v. *Rice,* 53 Conn. 566, 5 Atl. 823; *Townsend* v. *Wilson,* 77 Conn. 411, 59 Atl. 417; *Holcombe* v. *Spencer,* 82 Conn. 532, 74 Atl. 904; *Pierce* v. *Root,* 86 Conn. 90, 84 Atl. 295; *Bridgeport Trust Co.* v. *Marsh,* 87 Conn. 384, 397, 87 Atl. 865. We ought not, however, lightly to adopt a construction which will very likely result in an accumulation of income over a period of many years, in the aggregate amounting to an immense sum, accompanied, as it must be, with a denial of all the enjoyment of it to those in whom the beneficial interest is vested, and with an ultimate distribution to strangers to the blood of testator's father or to descendants yet unborn. Scrutinizing the will from this standpoint, there is found no least indication of a desire on the part of the testator that excess income should accumulate for the benefit of those who will ultimately receive the fund, and on the other hand, the provisions of the eleventh article show a purpose that there should be no such accumulation; for it contains directions to be carried out in the event that the trustee has "any unexpended funds in its hands." The testator evidently did not contemplate that there would be any excess funds which might not

be exhausted in one of the ways he specifies in that article, but, had he done so, there is every reason to believe that he would have provided against its accumulation. Now to construe the will as authorizing such an accumulation would be to go far beyond any purpose which could properly be ascribed to him and to run counter to his revealed intent as to the use of any excess funds in the administration of the trust. Nor can we read into the will a provision that the excess income shall be paid as it accrues to those to whom the residue is given, for that would be to make a will for the testator. We must construe the will so as not to do violence to his intent as there revealed. We therefore hold that since the testator failed to dispose of the right to the enjoyment of the income of the estate in excess of that reasonably needed for the purposes specified by him, a right to receive that excess as it may accrue from time to time vested at his death in the "heirs of the blood" of testator's father, as a part of the residue. *Hoadley* v. *Beardsley*, 89 Conn. 270, 282, 93 Atl. 535.

The remaindermen also claim that, despite the prohibition in the ninth article, the Exchange Place property and the Homestead may be sold by the trustee. That article provides that "the said trustee is hereby forbidden to sell or dispose of" the Exchange Place property and the Homestead. The remaindermen contend that the concluding words of this article, "within five years," can be applied as a limitation upon that prohibition; but that can be done only by doing such violence to the laws of syntax as would require for justification some further expression of such an intent on the part of the testator, and there is none. The failure of the will otherwise to limit the duration of the prohibition, to which they refer, is not of moment, for having denied the power of sale to the

"trustee" it was wholly unnecessary to add, "during the continuance of the trust," or the like. In the absence of other limitations upon the power of sale, the provision in the fourth article, "except as limited and provided in the next clause of this my will," undoubtedly refers to that contained in the ninth article, although by some rearrangement of the subject-matter in the composition of the document, or otherwise, the two clauses became separated; so that no support can be found there for an interpretation which would narrow the scope of the prohibition in question. On the other hand, as we have pointed out, one dominating thought of the testator was to retain the Exchange Place property and the Homestead as the source of the income from which the annuities were to be paid. We are unable to read the ninth article as expressing other than an absolute prohibition against the sale of these properties. It is quite possible that that article does not represent the real or complete mind of the testator, but to limit the prohibition against the sale of the properties in such a way as the remaindermen suggest would be to yield to mere surmise or conjecture.

One of the remaindermen, however, attacks the provision, if it is not so limited, as constituting an illegal and void restraint upon alienation, and he cites on his brief numerous cases in support of that contention. A few of these, upon examination, are seen to be illustrations of the doctrine which forbids a testator to postpone the transfer of the principal of a devise, with a direction that meanwhile the income only be paid to the devisee, where no one except the latter has an interest in the property; but that doctrine has been repudiated in this State; *DeLadson* v. *Crawford*, 93 Conn. 402, 106 Atl. 326; and would not be applicable in this case in any event because there is not the

requisite identity of persons between the life benefici-
aries and those entitled to the remainder interest.
Most of the cases cited in the brief fall, however, within
the established principle that one may not grant or
devise to another an estate with fixed legal incidents
and at the same time curtail him in the enjoyment
of those incidents, as where one devises an estate in
fee and adds a subsequent provision against the aliena-
tion of the property. *Tarrant* v. *Backus,* 63 Conn. 277,
285, 28 Atl. 46; *Burr* v. *Tierney,* 99 Conn. 647, 653,
122 Atl. 454; *Potter* v. *Couch,* 141 U. S. 296, 315, 11
Sup. Ct. 1005; *De Peyster* v. *Michael,* 6 N. Y. 467;
*Steib* v. *Whitehead,* 111 Ill. 247, 251; *Wool* v. *Fleet-
wood,* 136 N. C. 460, 464, 48 S. E. 785. The immedi-
ate reason generally given to support that principle is
the direct repugnancy between the estate granted and
the limitation intended, and that reason has of course
no application to a devise in trust, for there, whatever
be the legal estate devised, in equity that estate is of
necessity limited and qualified to accomplish the pur-
poses of the trust. *Stanley* v. *Colt,* 72 U. S. (5 Wall.)
119, 163. There is, indeed, a clear recognition of the
power of the creator of a trust to restrain the aliena-
tion of real estate forming a part of it in the statute
of this State which grants to probate courts the right
to order the sale or mortgage of real estate devised in
trust, for that power is expressly limited by the words,
*"provided,* such sale or mortgage is not prohibited by
said will." General Statutes, § 4902.

.Here it is necessary to point out that we are not
concerned with the validity of the trust itself, that is,
the aggregate of the rights in the fund of which it
consists, however the component parts of that fund
may vary, by purchase and sale, investment and rein-
vestment, and the like. If the beneficial interests
under the trust are validly created, the trust is valid

and its duration is limited only by the needs of the purpose it is created to accomplish. *Loomer* v. *Loomer,* 76 Conn. 522, 527, 57 Atl. 167; note, 49 Amer. St. Rep. 129; and see *Connecticut Trust & Safe Deposit Co.* v. *Hollister,* 74 Conn. 228, 233, 50 Atl. 750. Where, as in the instant case, all estates, legal and equitable, vest within the period fixed by the rule against perpetuities, unquestionably the trust is valid, and will continue until the death of the longest living annuitant. But the testator attempted to so control the devolution of his property that the pieces of real estate in question must remain in the trust until the expiration of the annuity which lasts longest, and we have really to determine how long under the law such a restraint upon its alienation may continue. Kales on Estates, etc. (2d Ed.) § 658. The effect would be the same if there had been an express gift over of the two pieces of real estate in question to the "heirs of the blood of my father," to take effect at the expiration of the longest lasting annuity.

There are undoubtedly principles of public policy which cause courts to scrutinize with care efforts to impose restraints upon the alienation of property. The refusal to sanction such restraints has often been attributed to the rule against perpetuities and in fact legislation in many of the States, adopted in supposed modification of that rule, in terms forbids restraints upon alienation. Gray on Perpetuities (3d Ed.) § 735 *et seq.;* 30 Cyc. 1501 and 1518 *et seq.* The rule against perpetuities and that against restraints upon alienation are in reality entirely distinct, the former being concerned only with the vesting of estates in right, and the latter with the limitation which may be imposed upon the enjoyment of the property. Gray on Perpetuities (3d Ed.) §§ 121 *f,* 278 *d;* Kales on Estates, etc. (2d Ed.) § 658; *Johnston's Estate,* 185 Pa.

St. 179, 184, 39 Atl. 879; *Bancroft* v. *Maine State Sanatorium Asso.*, 119 Me. 56, 109 Atl. 585; *Michigan Trust Co.* v. *Baker*, 226 Mich. 72, 196 N.W. 976. But by analogy the same rule has been adopted for determining the length of time during which the alienation of lands may be lawfully restrained as is used in determining the period within which an estate must vest in order to be valid. Thus, Knowlton, J., in *Winsor* v. *Mills*, 157 Mass. 362, 364, 32 N.E. 352, says that where a restraint upon alienation is "held permissible for a limited time, it would be deemed unreasonable, and contrary to the policy of the law, to allow it to continue beyond the period fixed by the rule against perpetuities." Lewin, in his work on "Trusts," 12th Ed., page 95, says: "A settlor is permitted (by analogy to the duration of a regular entail upon a common law conveyance) to fetter the alienation of property for a life or lives in being and twenty-one years." The statutes in the several States expressly forbidding restraints upon alienation, which may be taken as representing the public policy of those States, are held to apply to property granted or devised in trust; *Everitt* v. *Everitt*, 29 N.Y. 39, 71; *Congdon* v. *Congdon*, 160 Minn. 343, 200 N.W. 76; *Methodist Church of Newark* v. *Clark*, 41 Mich. 730, 3 N.W. 207; *Estate of Hendy*, 118 Cal. 656, 50 Pac. 753; *Penfield* v. *Tower*, 1 N.D. 216, 46 N.W. 413; *De Wolf* v. *Lawson*, 61 Wis. 469, 21 N. W. 615; and those statutes in general restrict the permissible duration of such restraints to a period measured by a life or lives in being and twenty-one years. Gray on Perpetuities (3d Ed.) p. 557 *et seq.* In England, the restraint upon alienation of an absolute equitable interest has been permitted as an exception to the general rule where it was imposed for the benefit of a married woman to be effective during coverture, and the courts have fixed as the possible duration

of such a trust a life in being and twenty-one years. Gray, in his Perpetuities (3d Ed.) § 121 *i*, speaking of the necessary limitations upon those trusts where the transfer of the principal to the beneficiary is postponed pending a period in which he is to get the income only, suggests that it is perhaps likely that the same period will be adopted. In *Hoadley* v. *Beardsley,* 89 Conn. 270, 279, 93 Atl. 535, we recognized the doctrine that a trust for accumulation must be strictly confined within a life or lives in being and twenty-one years, and we pointed out that if the measure of it is not based on a life or lives, the permissible duration is twenty-one years.

In view of these authorities and analogies, we can only conclude that a trust may not in any event be so created as to prevent the alienation of the property comprising it for a period which might exceed the duration of a life or lives in being and twenty-one years. By that test, the restraint which the testator sought to impose in the ninth article of his will is necessarily invalid, for it was to extend throughout the duration of the trust, and that in turn was to continue throughout the lives of persons in being at his death, to whom life annuities were given, and also during the lifetime of their children, who might be born after his death, and who would succeed to the annuities. We are not then called upon to determine whether the peculiar circumstances of a particular case might not make a restraint upon the alienation of property held in trust for a shorter period so against public interest and welfare as to require it to be held invalid.

The effect of the invalidity of the ninth article in these respects depends upon the intent and plan of the testator so far as discoverable from the terms of the will, read in the light of the surrounding circumstances   He certainly had in mind certain restrictions

and directions as to the ways in which the Exchange Place property and the Homestead should be handled by the trustee, but those matters were an incident to, not a reason for, their continuance in the trust; the "wish" that Blanche M. Pierce and the "request" that Pedro Delgazo, be continued in the employment of the trustee, which are stated in the fourth article, are couched in language which, particularly when contrasted with the imperative nature of the testator's other instructions, can only be regarded as precatory; *Loomis Institute* v. *Healy,* 98 Conn. 102, 114, 119 Atl. 31; *Hughes* v. *Fitzgerald,* 78 Conn. 4, 7, 60 Atl. 694; and an intent to continue the real estate in the possession, of the trustee simply to secure their performance could hardly be inferred. That there was on his part a desire to withhold the property from Merriman and Brown as an end in itself is improbable, because of his cordial relations with them and the entire absence of anything to suggest their untrustworthiness in any particular, and because the postponement of the enjoyment of the property until the death of the last surviving annuitant would almost to a certainty affect not. only them but also those who might succeed to their rights. That there was in the mind of the testator a definite desire to pass the specific property on in the line of descent from his father at the end of the trust would seem at first blush not unlikely; yet such an intent can hardly be reconciled with the language of the will; for, instead of a specific devise over of the property, or a direction to the trustee to transfer, it, it is left to pass by a general residuary clause. *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 328, 130 Atl. 483. On the other hand, the creation of the trust is expressly stated in the fourth article to be "for the purpose of raising all such sums of money as shall be required for the payment of the trusts, an-

nuities, charges and legacies hereby created, given, and bequeathed." The directions in the will as to the administration of the trust show the testator to have been a man of a fixed and somewhat peculiar mind in the management of property, and we cannot assume in him any purpose other than such as finds support in the will itself. It must be held that the testator's main intent in the provisions against the sale of the properties was to continue them as the source of the income necessary for the payment of the annuities. That being so, the invalidity of those prohibitions in no way affects any general or dominant plan he intended to effect, and the beneficial gifts, which it was certainly his purpose in all events to make, remain unaffected. *Tarrant* v. *Backus,* 63 Conn. 277, 284, 28 Atl. 46; *Johnson* v. *Preston,* 226 Ill. 447, 458, 80 N.E. 1001; *Manice* v. *Manice,* 43 N.Y. 303; *Whitman's Estate,* 248 Pa. St. 285, 93 Atl. 1062.. The prohibition against the sale of the Exchange Place property and the Homestead being invalid, the exception in the fourth article from the general power of sale given therein to the trustee fails, at least as to them, and the trustee has full power to sell and convey these properties. *Bates* v. *Spooner,* 75 Conn. 501, 508, 54 Atl. 305.

Should both the properties be sold, the provisions of the will for the use of the income beyond that needed to pay the annuities would no longer be operative, and the trustee would in all probability be in possession of a fund very much larger than that needed for them. In such a contingency the considerations which we have advanced with reference to an excess of income beyond that required to carry out the purposes specified in the will would in the main be applicable. Certainly there is nothing in the will which points to an intent on the part of the testator to have the trustee

hold until the death of the last annuitant a fund in amount far in excess of that needed to provide sufficient income to pay the annuities, and in the absence of such an intent, that result cannot follow. In such a situation, it is well settled that the proper course to adopt is to set aside for the trust so much of the fund as will assure the production of income sufficient to pay the annuities, and distribute the balance of the principal as provided in the residuary clause of the will. *Bristol* v. *Bristol,* 53 Conn. 242, 258, 5 Atl. 687; *Beers* v. *Narramore,* 61 Conn. 13, 22 Atl. 1061; *Sears* v. *Hardy,* 120 Mass. 524. The amount to be retained by the trustee should be ample to assure the production of income sufficient to pay the annuities, and must be determined by it subject to the control which the Court of Probate will exercise in the approval of the trustee's accounts. *Wordin's Appeal,* 64 Conn. 40, 51, 29 Atl. 238; *Sterling* v. *Ives,* 78 Conn. 498, 512, 62 Atl. 948. Should the fund retained produce an income in excess of that needed to pay the annuities, that excess must be paid from time to time, as we have already indicated, to the beneficiaries under the residuary clause or those who may come to stand in their shoes.

We are asked to advise whether the provision in the fourth article, restricting leases of the property to one year and forbidding any promises of longer leases, and that in the eleventh article, directing that no new buildings placed upon the Exchange Place property and the Homestead shall exceed three stories in height, are binding upon the trustee. In *Holmes* v. *Connecticut Trust & Safe Deposit Co.,* 92 Conn. 507, 514, 103 Atl. 640, in holding invalid certain conditions attached to the enjoyment of a trust estate by the *cestui que trust,* as fraught with danger to the proper conduct of the marital relationship, we said: "As a general rule,

a testator has the right to impose such conditions as he pleases upon a beneficiary as conditions precedent to the vesting of an estate in him, or to the enjoyment of a trust estate by him as *cestui que trust*. He may not, however, impose one that is uncertain, unlawful or opposed to public policy." So it may be said of the directions and restrictions which a testator may impose upon the management of property which he places in a trust, that they are obligatory upon the trustee unless they are uncertain, unlawful or opposed to public policy. Lewin on Trusts (12th Ed.) 90. In the instant case, the length of time during which the testator directed that the property should remain in the trust and the complete uncertainty as to the individuals to whom it would ultimately go, preclude any thought of an intent on his part to forbid the cumbering of the property by long leases or the burdening of it with large buildings, lest the beneficiaries be embarrassed in the development of it along such lines as they might themselves prefer. The only other purpose which can reasonably be attributed to him is to compel the trustee to follow his own peculiar ideas as to the proper and advantageous way to manage such properties. That the restrictions are opposed to the interests of the beneficiaries of the trust, that they are imprudent and unwise, is made clear by the statement of agreed facts, but that is not all, for their effect is not confined to the beneficiaries. The Exchange Place property is located at a corner of the public square in the very center of the city of Waterbury, in the heart of the financial and retail business district, is as valuable as any land in the city, and is most favorably adapted for a large building containing stores and offices, and the Homestead is located in a region of changing character, so that its most available use cannot now be determined. To impress the restric-

tions in question upon these properties, as the statement of agreed facts makes clear, makes it impossible to obtain from them proper income return or to secure the most desirable and stable class of tenants, requires for the maintenance of the buildings a proportion of income greatly in excess of that usual in the case of such properties, and will be likely to preclude their proper development and natural use. \The effect of such conditions cannot but react disadvantageously upon neighboring properties, and to continue them, as the testator intended, for perhaps seventy-five years or even more, would carry a serious threat against the proper growth and development of the parts of the city in which the lands in question are situated. The restrictions militate too strongly against the interests of the beneficiaries and the public welfare to be sustained, particularly when it is remembered that they are designed to benefit no one, and are harmful to all persons interested, and we hold them invalid as against public policy.    *Mitchell* v. *Leavitt,* 30 Conn. 587, 590; *Egerton* v. *Earl Brownlow,* 4 H.L. Cas. 1, 143, 148, 150.

The remaining matters as to which our advice is asked may be quickly disposed of.    The powers given the trustee to sell, lease, and convey the real estate in its hands do not give it the right to place mortgages upon the property; should the trustee deem it for the best interests of the beneficiaries under the trust to do so, the statute permits it to apply to the Court of Probate for authority.    *Townsend* v. *Wilson,* 77 Conn. 411, 416, 59 Atl. 417; General Statutes, § 4902.    The five-year limitation in the ninth article upon the power of the trustee therein given to sell real estate other than the Exchange Place property and the Homestead, ended the testamentary authority of the trustee at the expiration of that time, but that would not prevent the Court of Probate, under the provisions of

§ 4902 of the General Statutes, already referred to, from ordering a sale in a proper case; it is far more probable that the testator intended merely to limit the untrammeled discretion of the trustee to sell of its own accord, than that he desired these lands to remain in the trust until the ultimate distribution of the property. See *Gilman* v. *Gilman,* 99 Conn. 598, 607, 122 Atl. 386. The provision in the tenth article, forbidding the trustee to invest "in any railroad bonds or in any corporation not located in the city of Waterbury," does not prohibit investment in State and municipal bonds. The direction in the fourth article as to the maintenance of an office in the Exchange Place property is obligatory upon the trustee so long as that property remains in the trust.

We answer the questions propounded as follows: (1) The "heirs of the blood of my father William Brown" were at testator's death Frederick J. Brown and Buckingham P. Merriman, who then took, subject to the carrying out of the provisions of the will, a vested estate in remainder in the trust fund, alienable and devisable, but with the enjoyment thereof postponed. (2) No. (3) No; but should there be an income from the estate in excess of that reasonably needed to carry out the provisions of the will, the "heirs of the blood of my father," or those who stand in their shoes, would be entitled to receive that excess from time to time as it might accrue. (4) The only accumulation of income the trustee ought to permit is that which is reasonably necessary to carry out the express provisions of the will. (5) The trustee should use the income to pay the incumbrances or improve the properties as provided in the will, and after retaining a reasonable amount for the proper administration of the trust and for contingencies, distribute any excess at reasonable intervals to the remaindermen

or those who represent them.` (6) No; except as it may be authorized to do so by the Court of Probate. (7) This question has been answered under (1) above. (8) The restriction that no new buildings on the properties in question shall exceed three stories in height, is invalid and not binding upon the trustee. (9) The ninth article was intended to forbid the sale of the Exchange Place property and the Homestead, but is to that extent invalid; the five-year limitation was intended to apply to the other real estate of the testator, and terminated the testamentary power of the trustee to sell at its expiration; the trustee may, however, sell the real estate in its possession if authorized to do so by the Court of Probate. (10) The trustee may invest in State and municipal bonds. (11) The trustee is obligated to keep open an office in the Exchange Place property so long as that property continues in the trust. (12) The provisions in the fourth article with reference to Blanche M. Pierce and Pedro Delgazo are precatory. (13) No. (14) The exception to the power of sale given in the fourth article was intended to refer to the ninth article, but, as the restrictions contained in it as far as they now would be operative are invalid, the exception does not in any way restrict the trustee.

No costs in this court will be taxed in favor of any party.

In this opinion CURTIS, HAINES and HINMAN, Js., concurred.

WHEELER, C. J. (concurring in the result but dissenting as to the ground of decision upon one point).

I agree in substance with the answers given to the questions propounded on the reservation. In some of the reasoning of the court I am unable to concur.

This applies principally to one point which is liable to affect the construction of wills in future cases, and in that I find the justification for this statement of opposing view. The opinion of the court holds that the annuities provided for in the fifth and sixth articles of the will of the testator do not offend against the rule of perpetuities, and for these reasons: "Each of the 'surviving children' for whom annuities are provided in the fifth and sixth articles must obviously be in being at the death of his parent, and the gift to him must vest immediately upon that death. All the annuities must vest, then, within a life or lives in being and twenty-one years, and none of them are, therefore, obnoxious to the rule against perpetuities." Since the conclusion that none of the annuities provided for in these articles are obnoxious to this rule is vital to the determination of whether the trust created by this will in this plaintiff, or the prohibition against the sale of the properties as provided in article ninth, is, for that reason, invalid, and for the better understanding of this question, I discuss the conclusion which the court reached in the reasons quoted, and which I understand counsel concede, at somewhat greater length.

Article fifth gives (1) an annuity to the testator's half-brother Frederick J. for life; (2) upon his decease the annuity is given to his two children Leonie M. Brown Williams and Hayden W. Brown in equal proportions for their lives; (3) in the event of the decease of Mrs. Williams one half of this annuity is given to her surviving children in equal proportions for their lives; (4) in the event of the decease of either of them to the survivor or survivors during their lives; (5) in the event of the decease of Hayden W. Brown one half of this annuity is given to his surviving children in equal proportions for their lives, and (6) in the

event of the decease of either of them to the survivor or survivors for their lives.

Mrs. Williams had three children born prior to, and living at, the decease of the testator, and one child, Rachel, born after the decease of the testator, and these four children are now living. Hayden W. Brown has two children, William and Francis, both born prior to the death of the testator.

No possible question arises as to the annuities provided for in the seventh article. The annuities given in the fifth article upon the decease of Mrs. Williams and Hayden W. Brown are to their "surviving children." Obviously they must be those in being at the decease of their parent, hence the gift to them will vest in the surviving children immediately at the decease of the parent. The provision that "in the event of the decease of either of them," that is, the child of Mrs. Williams or Hayden W. Brown, the annuities shall be paid "to the survivor or survivors," adds nothing to what has already been said, that is, that in the event of the decease of Mrs. Williams or Hayden W. Brown, one half of the annuity shall be paid in equal proportions to each of her or his surviving children. None of these annuities were obnoxious to the rule against perpetuities, since each vested as one of a class within a life or lives in being at the decease of the testator and twenty-one years and the period of gestation after such life or lives in being.

The sixth article gives an annuity during his life to Buckingham P. Merriman and upon his decease it gives the annuity in equal proportions to his surviving children, that is, those living at his decease, in whom it then vests. This provision is therefore not obnoxious to the rule against perpetuities.

The opinion then holds that "where, as in the instant case, all estates, legal and equitable, vest within

the period fixed by the rule against perpetuities, unquestionably the trust is valid, and will continue until the death of the longest living annuitant." In all of these positions I fully agree. The opinion then says these annuities "fix as the duration of the trust not only the period of the lives of the annuitants in being at his death, but also the further period of the lives of the children who may be born to the named annuitants after his death, that is, a period of possibly seventy or eighty years, or even longer." And this latter provision falls, the court holds, within this rule.

I have been unable to understand the last statement, or the conclusions drawn as to the prohibition forbidding the trustee to sell the two properties included within it, as involving other than a contradiction with what precedes it. The opinion holds the trust good during the period of life of the annuities and that none of the annuities are obnoxious to this rule, yet the trust is bad so far as it continues beyond the lives of living annuitants because it extends beyond the period fixed by the rule of perpetuities. Let us determine the purposes, the scope and the duration of the trust created by article fourth of the will.

The specified purposes, as provided by articles fourth and eleventh, are (1) the care, custody, investment and reinvestment of the trust estate; (2) the payment of the annuities, trusts, charges and legacies provided in the fifth, sixth and seventh articles of the will; (3) the accumulation of income for payment of the incumbrances on the Exchange Place property and West Main Street property "so fast as the trustee shall have any unexpended funds in its hands, or to use the funds of said estate as it may deem necessary and proper for the improvement and construction of" these properties; (4) the maintenance of an office for the administration of the trust in the Exchange Place

and West Main and Meadow Streets property; (5) the retention during their lives of Blanche M. Pierce as the head of the office of the trust and of Pedro Delgazo as a janitor. The will does not expressly specify the duration of the trust, nor the time of its ending, nor prescribe whether the corpus of the trust fund shall continue during the duration of the trust, nor whether any portion of it may be sooner released from the trust. These may be determined from a reading of the will, out of its necessary implications. It is apparent that the duration of the trust cannot exceed that of the annuities created in articles fifth, sixth and seventh, since the ending of the annuities must end the trust, and the remainder interest, long legally vested, must then vest in enjoyment. The primary purpose of the creation of the trust was to prevent the corpus of the trust fund being distributed during the life of the annuities.

Since the duration of the trust is coterminous with that of the annuities it cannot continue longer than they continue. A trust can never extend beyond the period comprised within the rule against perpetuities. Trusts such as this, for the accumulation of income and its appropriation for defined and lawful purposes, "must be strictly within the limits of the rule against perpetuities, and . . . if such a trust exceeds those limits, it is void." *Hoadley* v. *Beardsley*, 89 Conn. 270, 279, 93 Atl. 535; *Lewis Oyster Co.* v. *West*, 93 Conn. 518, 527, 107 Atl. 138; *Bates* v. *Spooner*, 75 Conn. 501, 54 Atl. 305. Sometimes a trust may be good in part and in part offend this rule; if these parts are separable the good may stand while the bad will fall. Examples of the application of this rule are found in *Connecticut Trust & Safe Deposit Co.* v. *Hollister*, 74 Conn. 228, 50 Atl. 750; *Loomer* v. *Loomer*,

76 Conn. 522, 57 Atl. 167.    Since the annuities are not obnoxious to this rule the trust is not obnoxious to it.

True reasoning, as well as the rule of the authorities lead to these conclusions.    None of the annuities under these articles offend against the rule.    The duration of the trust at its maximum life is measured by the life of the last surviving annuitant.    Within this period every provision of the trust is good and every exercise of the power given to the trustee is valid in so far as the rule against perpetuities is concerned.    Every provision of the trust, and every exercise of the power vested in the trustee cannot offend against the rule during the life of the annuities.    If any of the annuities provided by these articles did offend against the rule, the trust and the powers given to the trustee would only be invalid during the period of the invalid annuity.    Nor would either offend against the rule during the period of the existence of the valid annuities, which in this case the opinion of the court in its later pronouncement holds to be all of the named living annuitants.    Resting upon its conclusion that the trust was to continue throughout the life of children of living annuitants born after the death of the testator and was to that extent void, the opinion holds that the prohibition of the ninth article forbidding the trustee to sell these properties was void.    It correctly indicates the distinction between the rule against perpetuities and that against restraints upon alienation to be that the first is concerned with the vesting of estates in right and the latter with the limitation which may be imposed upon the enjoyment of the property.    "By analogy" the opinion truly holds, "the same rule has been adopted for determining the length of time during which the alienation of lands may be lawfully restrained as is used in determining the period within which an estate must vest in order to be valid."

The opinion continues: "We can only conclude that a trust may not in any event be so created as to prevent the alienation of the property comprising it for a period which might exceed the duration of a life or lives in being and twenty-one years. By that test, the restraint which the testator sought to impose in the ninth article of his will is necessarily invalid, for it was to extend throughout the duration of the trust, and that in turn was to continue throughout the lives of persons in being at his death, to whom life annuities were given, and also during the lifetime of their children, who might be born after his death, and who would succeed to the annuities."

The annuities provided for in these articles were not within the rule, therefore the trust whose duration was measured by their duration was not within the rule, and since the maximum period for which a restraint on alienation is valid is measured by the same rule, the prohibition under the ninth article forbidding the trustee to sell these properties extended throughout the duration of the trust, and did not offend against this rule. Further, while holding that the trust is good as to all annuities under these articles except those to the children of persons living at, but born after, the decease of the testator, the opinion holds the prohibition against alienation by this trustee is not only void as to the period beyond the life of those living at the testator's decease but void as well, for the period covered by the lives of the annuitants living at the decease of the testator. The premise seems to me wrong, the reasoning fallacious and the result at war with authority.

If any of these annuities were void because of falling within this rule and the trust and the prohibition against alienation as to this void, it would not follow that the trust or the prohibition against alienation

would be void *in toto*. The prohibition would in such case offend the rule as to the period of the annuity which fell within the rule and to that extent made void the trust. It and the trust would not offend the rule as to the period of life of the other annuities. If this were all, to this extent the prohibition against alienation in the ninth article would be good, and the period of time covered by the life of annuitants living at the decease of the testator might aggregate upward of seventy-five years. There would still be before us, undecided by the opinion of the court, the question whether these restraints on alienation although good as not offending the rule of perpetuities were for other reasons bad in law. I repeat. None of the annuities provided for in these articles offend this rule. If I am mistaken as to this, unquestionably the annuities to persons living at the decease of the testator, do not offend the rule. It is the law that a restraint upon alienation may not offend this rule, yet be bad because against public policy. And this principle of the law is applicable whether all or some of the annuities provided in these articles are good. When the restraint unreasonably impedes the economic development of the community by taking the property out of commerce an unreasonable length of time, and thus unreasonably injures the public welfare, it becomes an unreasonable restraint on alienation in consequence of the social loss it causes through its limitation of restraint, and is therefore void. A trust or a provision of a trust or a restraint upon alienation which is contrary to public policy is void and will not be enforced. *Manierre* v. *Welling*, 32 R. I. 104, 78 Atl. 507; *Egerton* v. *Earl Brownlow*, 4 H. L. Cas. 1, 144; *Stanley* v. *Colt*, 72 U. S. (5 Wall.) 119, 163; Perry on Trusts, Vol. 1 (6th Ed.) § 21.

In the will before us the restraint on the aliena-

tion of the Exchange Place and Homestead properties is prolonged through the lives of three generations covering a span of perhaps seventy-five to a hundred years. This restraint on the alienation of these properties is opposed to the interests of the beneficiaries of the trust. The Exchange Place property is located at a corner of the public square in the very center of the city of Waterbury, in the heart of the financial and retail business district; it is as valuable as any land in the city, and is most favorably adapted for a large building containing places of business and offices. The Homestead is located in a central locality of changing character, so that its most available use cannot now be determined.

The effect of a prohibition against the alienation of these properties cannot but react disadvantageously upon neighboring properties, and if continued for seventy-five or more years would seriously impede the proper growth and development of the business parts of the important and growing city of Waterbury, whose opportunities for business development are somewhat restricted by its location. The restrictions militate so strongly against the interests of both beneficiaries and the public as to make them unreasonable. For this reason I would hold the prohibition forbidding the trustee to sell in article ninth invalid as against public policy.